COMMONWEALTH *vs.* ROBERT P. MURPHY.

Suffolk. December 8, 1997. - January 7, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions, Relevancy and materiality, Videotape. *Practice, Criminal,* Admissions and confessions, Instructions to jury, Argument by prosecutor, Assistance of counsel, Capital case. *Intoxication. Malice. Homicide.*

At a criminal trial, there was insufficient evidence for the judge to address, on his own motion and before the statements were admitted in evidence, the issue of the voluntariness of the defendant's admissions to a private citizen [397-399]; further, for the same reason, there was no error in the judge's not instructing the jury on the issue of the voluntariness of those statements, which would have, in the circumstances, undermined the defendant's testimony disavowing the statements [399].

At a murder trial, the judge's instructions to the jury on voluntary intoxication as it related to the element of malice were adequate, and there was no error, in the circumstances, in the judge's refusal to give a specific instruction on intoxication as it related to extreme atrocity or cruelty or in particular language from *Commonwealth* v. *Gould,* 380 Mass. 672, 686 n.16 (1980), that the defendant had not requested. [399-400]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the judge's instruction defining malice that was rendered obsolete by this court's decision in *Commonwealth* v. *Eagles,* 419 Mass. 825, 836 (1995), where the judge's instructions on the three prongs of malice adequately conveyed the meaning of that term to the jury. [400-401]

At a murder trial in which the evidence did not warrant a finding of a risk of harm less than a strong likelihood of death, the judge's error in referring to "grievous bodily harm" in his instruction on malice was harmless. [401]

At a murder trial, a police officer's testimony that removing a knife from the body of the victim "required force" was relevant to whether the defendant acted with malice and to whether the defendant acted with cruelty or atrocity. [401-402]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the admission of testimony that the defendant killed the victim in the presence of their two year old son, where that was relevant to whether the defendant acted with extreme atrocity or cruelty. [402]

At a murder trial, the judge did not abuse her discretion by allowing the jury to view a videotape of the murder scene from which the judge had ordered edited the most inflammatory parts. [402]

At a murder trial, the defendant was not prejudiced by a fleeting reference, not

elicited or argued by the prosecutor, made by the defendant's sister, to the effect that she had sought a lawyer for him. [402]

At a murder trial, there was no reversible error in the judge's admitting certain evidence of the hostile relationship between the victim and the defendant, which was relevant and not excessively repetitive; in any event, the evidence was cumulative and not prejudicial. [402-403]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by a question asked by the prosecutor, an objection to which the judge sustained and which the judge immediately instructed the jury not to consider as evidence. [403]

At a murder trial, the prosecutor's closing argument properly summarized the testimony of the medical examiner and it created no substantial likelihood of a miscarriage of justice. [404]

This court concluded, on review of a first degree murder conviction under G. L. c. 278, § 33E, that there was no substantial likelihood of a miscarriage of justice in the affirmance of the conviction and that the defendant's claim of ineffective assistance of counsel was without merit. [404]

INDICTMENT found and returned in the Superior Court Department on August 26, 1993.

The case was tried before *Constance M. Sweeney*, J.

*David H. Erickson* for the defendant.

*Paul B. Linn*, Assistant District Attorney (*James J. Larkin*, Assistant District Attorney, with him) for the Commonwealth.

MARSHALL, J. The defendant was convicted of murder in the first degree on the theory of extreme atrocity or cruelty. On appeal he argues that incriminating statements made to a friend should not have been admitted in evidence without a determination by the judge that they were voluntary, and that the judge should have given an instruction to the jury under our humane practice. He also challenges the judge's instructions on intoxication and on malice and several of her evidentiary rulings, argues that the prosecutor engaged in misconduct, and makes a claim of ineffective assistance of trial counsel. We affirm the conviction. We conclude that there is no basis for granting the defendant relief under G. L. c. 278, § 33E.

1. The jury could have found the following facts. The victim was killed in the early hours of Sunday, August 1, 1993. The day before and late into that Saturday evening, the defendant who was with the victim, his wife, was observed drinking substantial amounts of alcohol. There was also evidence that the defendant purchased additional alcohol during the day. Shortly

before midnight, the defendant and the victim were observed at a restaurant. They then returned home, and some time later the victim's teenage daughter heard the defendant speaking loudly to the victim. At about the same time, a neighbor who lived in an apartment downstairs heard noises that sounded like furniture being tossed about in the victim's apartment. On Sunday morning the victim was discovered by her daughter. She was lying on the floor of her bedroom with a knife in her chest.

A medical examiner testified that he found three stab wounds in the victim's chest, one of which was five to six inches long and had pierced two of the victim's ribs, her left lung, and her heart. There were bruises and cuts on the victim's neck, and other injuries that evidenced a blow to the head with a blunt object. The cause of death was determined to be a stab wound of the chest and blunt head and neck trauma.

At about 9 P.M. on Sunday evening, August 1, the defendant went to the home of a life-long friend. They talked, and when asked what had happened to his wife, the defendant replied, "We had a fight and I choked . . . her." The defendant looked tired and disheveled, but did not appear to be under the influence of alcohol. Later that same night, the defendant telephoned his sister who told him that his wife was dead and that the police were looking for him. She testified that the defendant became "hysterical."

Several days later the defendant went to the Boston police headquarters where he met with an investigating officer. The defendant was advised of his Miranda rights, and then told the officer that he had no memory of what had happened from the afternoon of Saturday, July 31, until the following Thursday. The defendant also said he had tried to kill himself.

At trial, the defendant took the stand and testified that at 2 A.M, on August 1, the victim had asked him to leave their apartment and he had done so, taking with him some beers, as well as some envelopes that needed to be mailed. He said he then walked to his sister's house in Quincy, where he slept until 9 A.M. that Sunday morning. He admitted that he had visited his friend later that evening, but denied that he said he had choked the victim.

2. (a) The defendant argues that the statements to his friend, a private citizen, were involuntary because he was exhausted,

suicidal, and hysterical at the time they were made,[1] and that the judge was obliged to address, sua sponte, the voluntariness of the statements before they were admitted in evidence. Where, as here, the defendant fails to raise the issue, a judge has no constitutional duty to do so, and is obliged to do so only where there is a substantial claim of involuntariness. *Commonwealth* v. *Brady*, 380 Mass. 44, 48-49 (1980). There was no such claim here. Prior to the testimony of the friend, the only suggestion that the statements to him might have been involuntary had been the testimony of the defendant's sister that the defendant was "hysterical" when they talked that same evening. This was insufficient for the judge to be concerned that the defendant's statements were involuntary. To the contrary, the defendant's response to his sister was not unusual on being informed that his wife was dead and that the police were looking for him.

We have reversed a conviction because of the absence of a sua sponte inquiry only where there is a claim of involuntariness far more substantial than this. Cf. *Commonwealth* v. *Harris*, 371 Mass. 462, 469 (1976) (holding that defendant's claim that police had beaten him required judge to conduct voir dire on voluntariness of defendant's statements). The defendant did testify later in the trial that he had consumed alcohol during the course of the day before he visited his friend. But there was no evidence that he was inebriated when he made the incriminating statements. See *Commonwealth* v. *Paszko*, 391 Mass. 164, 176 (1984) (statements made by defendant to cellmates while experiencing symptoms of drug withdrawal were voluntary). The defendant found his way to his friend's home without difficulty, and his answers to his friend's questions were responsive and coherent. See *Commonwealth* v. *Blanchette*, 409 Mass. 99, 106-107 (1991) (defendant's ability to write, address, and mail letter indicated rationality). The circumstances surrounding the statements were not inherently coercive (the home of a friend) and there is no evidence that the police were in any way connected with the visit. See *Commonwealth* v. *Brady, supra* at 50 n.2 ("We reserve the question whether the sua sponte voir dire called for in *Commonwealth* v. *Harris, supra* at 466-467, is mandated in a situation where noncustodial, uncoerced . . . inculpatory statements are made to civilian witnesses by one

---

[1] He does not argue that the statements were involuntary because he was intoxicated. In any event, the friend testified that the defendant did not appear to be intoxicated.

intoxicated from alcohol or drugs"). The judge did not err in failing to conduct a voir dire hearing sua sponte.

(b) We also are not persuaded on this record that there is error because the judge did not instruct the jury that these statements should be disregarded unless the Commonwealth proved beyond a reasonable doubt that the statements were voluntary. Such an instruction is required only when the voluntariness of a defendant's statements is a live issue at trial. See *Commonwealth* v. *Ferreira*, 417 Mass. 592, 600 (1994); *Commonwealth* v. *Benoit*, 410 Mass. 506, 513 (1991); *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982).

The friend's testimony that the defendant looked tired and spoke of suicide was not sufficient to raise the issue of voluntariness, particularly where, as established by the evidence, the defendant was coherent, and "appeared normal." See *Commonwealth* v. *Benoit*, *supra* at 513-517 (injuries to defendant's wrists did not raise issue of voluntariness, even in combination with evidence of intoxication and mental illness); *Commonwealth* v. *Allen*, 395 Mass. 448, 457-458 (1985) (defendant's statements voluntary although he was recovering from self-inflicted gunshot wound to head). Moreover, in this case the defendant denied that he had told his friend he had cut his wrists, and denied that he had threatened to kill himself. See *Commonwealth* v. *Anderson*, 425 Mass. 685, 691 (1997); *Commonwealth* v. *Tavares*, *supra* at 149. Given the defendant's strategy of disavowing those statements, an instruction on voluntariness may have undermined the defendant's testimony. See *Commonwealth* v. *Ferreira*, *supra* at 600 n.11.

3. There was no specific instruction to the jury on the relationship between intoxication and the ability of the defendant to act with extreme atrocity or cruelty. The defendant argues that under *Commonwealth* v. *Doucette*, 391 Mass. 443, 455 (1984), and *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), he was entitled to such an instruction.[2] We review the asserted deficiency in the context of the jury charge as a whole. See *Commonwealth* v. *Beauchamp*, 424 Mass. 682, 686 (1997); *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997).

Using the example of an instruction we suggested in *Com-*

---

[2]The defendant did object to the intoxication instructions and requested additional instruction.

*monwealth* v. *Sires*, 413 Mass. 292, 300 (1992), the judge gave the following instruction on intoxication: "Whenever the Commonwealth is required to prove — whether it be premeditation or intent or knowledge on the part of the defendant, you should consider all credible evidence relevant to the defendant's knowledge or ability to premeditate or form an intent, including any credible evidence of the effect on the defendant of his alleged consumption of alcohol or drugs or both." This instruction followed immediately her instructions on extreme atrocity or cruelty. We conclude that the instruction was adequate. In *Commonwealth* v. *Raymond, supra* at 387-388, we said that "a judge's explanation that the jury may consider intoxication in evaluating whether an essential element of murder in the first degree has been established is equivalent to an instruction that intoxication may be considered in reducing the verdict from murder in the first degree to murder in the second degree, and satisfies our requirements for instructions on voluntary intoxication." Here, the jury were given specific instructions on the relationship of intoxication to malice. They nevertheless found that the defendant was sufficiently sober to have acted with malice. In these circumstances, no reasonable juror could have doubted that the defendant was not "so far overcome by intoxicating substances as to be rendered incapable . . . of committing murder with extreme atrocity or cruelty." *Commonwealth* v. *Doucette, supra* at 455.[3] There was also no error in the judge's failure to instruct the jury explicitly that they could consider whether the defendant was too intoxicated "to appreciate the consequences of his choices." *Commonwealth* v. *Gould, supra* at 686 n.16. The defendant did not request this particular language and we have never said that the *Gould* instruction must be repeated verbatim. Cf. *Commonwealth* v. *Brousseau*, 421 Mass. 647, 654 (1996).

4. In addition to instructions referring to the three prongs of malice, *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987),

---

[3]We are fortified in our conclusion because here the defendant's own testimony substantiated that at the time of the murder he was not debilitated by alcohol or the "pain pills" that he said he had ingested. See *Commonwealth* v. *Morgan*, 422 Mass. 373, 377 (1996) (using standard of debilitating intoxication to judge voluntariness). The defendant recalled in great detail the events of that night, both before and after the time of the murder. He made clear that he was aware of his circumstances and capable of making rational decisions. Cf. *Commonwealth* v. *Parker*, 420 Mass. 242, 248 (1995) (defendant's ability to recall details of murder was "indicative of his clarity of mind").

the judge used a now obsolete definition of malice.[4] Because the defendant requested language nearly identical to the instruction he now challenges, we review the issue to determine whether the instruction given created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Morgan,* 422 Mass. 373, 380-381 (1996). There is no such likelihood, for we have said that instructions on malice that include both the three prong definition and an obsolete definition adequately convey the meaning of malice to the jury. See, e.g., *Commonwealth* v. *Cowels,* 425 Mass. 279, 289 (1997); *Commonwealth* v. *Fryar,* 425 Mass. 237, 245-247, cert. denied, 118 S. Ct. 636 (1997). We have reached this conclusion even where a judge has failed to explain that malice must be based on at least one of the three prongs. *Commonwealth.* v. *Torres,* 420 Mass. 479, 487-488 & n.7 (1995). In this case, in contrast, the judge made clear that "the Commonwealth must prove one of three . . . prongs of malice. One of the three must be proven."

The defendant also argues that the judge erroneously charged that the third prong of malice could be satisfied by an act that creates "a plain and strong likelihood that death or grievous bodily harm would follow." This error was harmless, because "the evidence [did] not warrant a finding of a risk of harm less than a strong likelihood of death." *Commonwealth* v. *Fryar, supra* at 248.

5. The defendant challenges various evidentiary rulings by the judge. He objected to testimony by a police officer that removing the knife from the victim "required force." The defendant does not claim that this was a constitutional error, and we review the ruling to determine whether the testimony was both improper and prejudicial. *Commonwealth* v. *Daggett,* 416 Mass. 347, 352 n.5 (1993). The testimony was relevant to whether the defendant acted with malice, and relevant to a consideration whether the defendant acted with extreme atrocity or cruelty. It was well within the judge's discretion to permit

---

[4]The judge instructed that "[m]alice aforethought refers to a state of mind which includes not only anger, hatred and revenge but also every other unlawful and unjustifiable motive" and that "[a]ny intentional killing of a human being without legal justification or excuse with no extenuating circumstances sufficient in law to reduce a crime to manslaughter is malicious within the meaning of malice aforethought." In *Commonwealth* v. *Eagles,* 419 Mass. 825, 836 (1995), decided four months after the defendant's trial, we said that "frame of mind" language such as this is "not helpful and ought in the future to be omitted."

the jury to consider the relationship between the force required to remove the knife and the depth and force required to drive the knife eight inches into the victim's body, cutting through two ribs in the process.

The defendant argues that the admission of evidence that he killed the victim in the presence of their two year old son was irrelevant to the issue of extreme atrocity or cruelty, and was prejudicial. The defendant did not object to the admission of the evidence on this ground, and our review is limited to whether the admission of the evidence created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Mello*, 420 Mass. 375, 379-380 (1995). There was no error. A defendant's indifference to the victim's suffering and the degree of the victim's suffering are among the factors that are relevant to whether the defendant acted with extreme atrocity or cruelty. *Commonwealth* v. *James*, 424 Mass. 770, 790 n.33 (1997); *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). The evidence that the victim's young son was in the bedroom and possibly witnessed her assault and death was relevant to establish the victim's own emotional suffering. Cf. *Commonwealth* v. *Barros*, 425 Mass. 572, 581 (1997) (appropriate for jury to consider "likely emotional response that [a victim] would have in response to being beaten and stabbed to death while his wife looked on").

Nor are we persuaded that the judge abused her discretion by allowing most of a videotape of the murder scene to be shown to the jury. A judge has broad discretion to admit visual evidence. *Commonwealth* v. *Simmons*, 419 Mass. 426, 431-432 (1995). In this case the judge properly exercised her discretion by previewing the videotape herself and by not allowing the jury to see inflammatory parts of the videotape. We have reviewed the evidence of the videotape and conclude that the judge committed no error.

The defendant challenges the admission of a statement by his sister, not objected to at trial, that she had sought a lawyer for him. There was no prejudice to the defendant. The prosecutor did not attempt to elicit that statement,[5] and did not refer to it during his closing argument. Cf. *Commonwealth* v. *Valentin*, 420 Mass. 263, 270-272 (1995) ("fleeting" references to defendant's prior crimes not prejudicial).

The defendant argues that a witness's repetition of the

[5]The prosecutor had asked whether the defendant's sister had informed another brother that the defendant was in her apartment.

defendant's statement that he earlier had threatened to "cut [the victim] up" was improper and overly prejudicial. We disagree. A single repetition of a detail is not excessive. *Commonwealth v. Kirkpatrick*, 423 Mass. 436, 445 n.5, cert. denied, 519 U.S. 1015 (1996). Nor was it reversible error for the judge to admit in evidence testimony by the victim's sister that she had observed that the victim appeared to be afraid while she was engaged in a telephone conversation with the defendant. The evidence was arguably relevant as circumstantial evidence of a hostile relationship between the victim and the defendant, or that the defendant had threatened the victim over the telephone. Compare *Commonwealth v. Rodriguez*, 425 Mass. 361, 369-371 (1997) (evidence of hostile relationship between defendant and victim relevant to show intent), with *Commonwealth v. Cyr*, 425 Mass. 89, 94 (1997) (victim's fear of defendant irrelevant, particularly where only issue at trial was defendant's degree of culpability). Even if the testimony were improperly admitted, there was no prejudice to the defendant because the testimony was cumulative of other evidence, admitted for a limited purpose, that the defendant had threatened the victim. *Commonwealth v. Andrade*, 422 Mass. 236, 239-242 (1996).

After the defendant testified that he was the father of a child with a woman other than his wife, the prosecutor asked the defendant to give the reason for the termination of that relationship. The defendant objected, and the objection was sustained. The defendant argues that the question improperly suggested an abusive relationship between the defendant and the woman. We do not agree. Although the defendant's request for a sidebar conference immediately after the ruling was denied, the defendant had other opportunities to ask for a mistrial and failed to do so. Because the defendant failed to preserve this issue, on appeal our review is limited to whether the question created a substantial likelihood of a miscarriage of justice. *Commonwealth v. Mello, supra* at 379-380. Here the judge took more than adequate precautions to ensure that the jury would not consider any possible inference that the defendant had abused the woman. In addition to sustaining, immediately, the defendant's objection to the question, the judge instructed the jury that questions by attorneys were not evidence. The jury are presumed to have followed that instruction. *Commonwealth v. Robicheau*, 421 Mass. 176, 180 (1995). There was no substantial likelihood of a miscarriage of justice. See *Commonwealth v. Fordham*, 417 Mass. 10, 20-21 (1994).

The defendant claims error for statements made by the prosecutor in his closing argument that the victim was "defenseless," and that the defendant had killed her "three different ways." The defendant did not object at trial, and argues now that the prosecutor's summation created a substantial likelihood of a miscarriage of justice. We disagree. The prosecutor properly summarized the testimony of the medical examiner on both points.

6. We have reviewed the record in accordance with our statutory obligation under G. L. c. 278, § 33E, and have determined that there is no substantial likelihood of a miscarriage of justice in our affirmance of the conviction. The defendant argues that his trial counsel was ineffective, as demonstrated by his repeated failure to make required or appropriate objections. The defense counsel's performance did not deprive the defendant of an otherwise available defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (stating two-prong test for ineffectiveness of counsel claim). Our standard of review under G. L. c. 278, § 33E, is more favorable to a defendant than our review of an ineffective assistance of counsel claim. *Commonwealth* v. *Carter*, 423 Mass. 506, 514 (1996). Having failed to show that any of the alleged errors warrants reversal under G. L. c. 278, § 33E, the defendant cannot succeed on his ineffective assistance of counsel claim by basing the claim on counsel's failure to object to those same errors. *Commonwealth* v. *Waite*, 422 Mass. 792, 807 (1996).

*Judgment affirmed.*