## COMMONWEALTH *vs.* NEIL J. NILAND.

No. 96-P-1732.

Middlesex. March 4, 1998. - September 29, 1998.

Present: FLANNERY, GILLERMAN, & DREBEN, JJ.

*Practice, Criminal,* Instructions to jury, Assistance of counsel. *Evidence,* Consciousness of guilt. *Malice. Homicide.*

At a murder trial, the judge's instructions on consciousness of guilt and malice aforethought were correct, and there was no likelihood, in light of the instructions as a whole and the evidence presented, that the jury convicted the defendant solely on the consciousness of guilt evidence. [529-530]

At a murder trial in which the defendant was convicted of murder in the second degree, no substantial risk of a miscarriage of justice arose from the judge's erroneous instructions on malice and the third prong of malice, where the evidence showed that the sleeping victim was shot in the head by a rifle barrel held within twelve inches of her face; moreover, there was no error in the judge's instructions on involuntary manslaughter. [531-533]

At a murder trial, defense counsel's failure to object to the judge's erroneous instructions on malice did not constitute ineffective assistance of counsel where the errors created no substantial risk of a miscarriage of justice. [533-534]

INDICTMENT found and returned in the Superior Court Department on July 14, 1994.

The case was tried before *Julian T. Houston,* J.

*Robert L. Sheketoff* for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Adrienne C. Lynch,* Assistant District Attorney, with her) for the Commonwealth.

FLANNERY, J. Upon an indictment for first degree murder, a Superior Court jury found the defendant, Neil Niland, guilty of murder in the second degree. G. L. c. 265, § 1.[1] On appeal, the

---

[1] The defendant was also charged and found guilty of unlawful possession of a rifle. G. L. c. 269, § 10(*h*). The trial judge placed the conviction on file

defendant contends that the trial judge erred in (1) refusing to instruct the jury that consciousness of guilt evidence was not probative on the issue of malice and (2) giving erroneous instructions on malice and involuntary manslaughter. We affirm the conviction.

We briefly summarize the facts presented at trial in the light most favorable to the Commonwealth, *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994), reserving certain details to be discussed as they are relevant to the issues. The victim was the defendant's girlfriend and the mother of his two and one-half month old daughter. The victim moved in with the defendant following the child's birth. The defendant shared a three-bedroom, second-floor apartment with his two sisters. On the night of June 25, 1994, the defendant and victim had argued twice, once at 10:30 and again at midnight. At 1:30 A.M., Sunday, June 26, they were watching television and were joined by the defendant's sisters and their boyfriends. Five minutes later the victim announced that she was tired and went to her bedroom. The defendant followed at 1:55 A.M. Approximately ten minutes later, in the bedroom lit by television, the defendant shot the victim with his .22-caliber, semiautomatic long rifle, at a forty-five degree angle, within twelve inches of the sleeping victim's face. A single bullet entered the victim's right cheek and lodged in the membrane surrounding the brain. She never regained consciousness and died of the gunshot wound three days later.

1. *Consciousness of guilt instruction.* After waiving his Miranda rights each time, the defendant gave three different accounts to the police of what took place in the bedroom.[2] In the defendant's first account he claimed that he was sitting on the bottom corner of the bed, facing the television set, cleaning the rifle, when it accidentally went off. In his second account of events, he claimed that the rifle was keeping him from sleeping because it was lying directly underneath him between the mattress and the box spring. He decided to take the gun apart and place it at the bottom of the bed. He claimed he was sitting in

---

with the defendant's consent. Accordingly, that conviction is not before us. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

[2]The defendant also gave two conflicting stories about how he acquired the rifle. In the first version he claimed he found it in the attic of an old apartment. In his second version he claimed he found it in the basement of a past apartment building. The Commonwealth presented evidence that the defendant bought the rifle from a friend of the victim's family two years before the killing.

the center of the side of the bed attempting to take the rifle apart and that, as he twisted the barrel apart, the rifle went off. In the defendant's third account, he claimed he was standing next to the side of the bed trying to take the gun apart, by twisting the barrel with his right hand and taking the stock in his left hand, when his left middle finger or ring finger hit the trigger and the rifle fired. The Commonwealth's firearms expert witness opined that the ballistics evidence was inconsistent with all three of the places the defendant claimed to have been sitting or standing.

At the request of the Commonwealth, the trial judge instructed the jury on consciousness of guilt as follows:

> "If the Commonwealth has proved that the defendant did give false statements to the police, you are permitted to consider whether such actions indicate feelings of guilt by the defendant, and whether, in turn, such feelings of guilt might tend to show actual guilt on these charges. You are not required to draw such inferences, and you should not do so unless they appear to be reasonable in light of all the circumstances of this case.

> "If you decide that such inferences are reasonable, it will be up to you to decide how much importance to give them. But you should always remember that there may be numerous reasons why an innocent person might give false statements to the police. Such conduct does not necessarily reflect feelings of guilt. Please also bear in mind that a person having feelings of guilt is not necessarily guilty in fact, for such feelings are sometimes found in innocent people.

> "Finally, remember that, standing alone, such evidence is never enough by itself to convict a person of a crime. You may not find a defendant guilty on such evidence alone, but you may consider it in your deliberations along with all of the other evidence that has been admitted in this case."

The defendant contends that the "might tend to show actual guilt" language improperly allowed the jury to consider the defendant's inconsistent statements as evidence of malice. He further contends that the effect was compounded by the Commonwealth's closing argument that the statements could be

considered as evidence of murder and by the trial judge's instructions that the jury could consider all of the evidence in deciding whether the Commonwealth had met its burden on the crime of murder. We do not agree.

Consciousness of guilt evidence is relevant to the issue of whether an unlawful killing was committed but is not evidence of malice aforethought. See *Commonwealth* v. *Lowe*, 391 Mass. 97, 108 n.6, cert. denied, 469 U.S. 840 (1984). However, "[i]n determining the propriety of a jury instruction, '[w]e must consider the instruction in question in the context in which it was delivered, in order that we might determine its probable effect on the jury's understanding of their function.' " *Commonwealth* v. *Fryar*, 425 Mass. 237, 246-247, cert. denied, 522 U.S. 1033 (1997), quoting from *Commonwealth* v. *Adrey*, 397 Mass. 751, 753-754 (1986).

The defendant concedes that the instructions were generally in accord with the *Toney* charge. See *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982) ("We think that a judge should instruct the jury [1] that they are not to convict a defendant on the basis of evidence of flight or concealment alone [see, e.g., *Commonwealth* v. *Smith*, 368 Mass. 126, 129 (1975)], and [2] that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant"). In accordance with the supplemental *Toney* instructions, the judge also cautioned the jury that feelings of guilt may also be present in innocent people. See *id.* at 585-586 n.6. The defendant argues, however, that, because the presence or absence of malice was a central issue at trial, the jury should have been given an explicit instruction that consciousness of guilt evidence can only be used as proof that an unlawful killing had been committed. Although the judge did not expressly instruct the jury that they could not infer malice aforethought from the consciousness of guilt evidence, the jury were properly instructed on consciousness of guilt, and the later instructions on malice aforethought adequately informed the jury of the distinction. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 392 (1992). "[W]hile consciousness of guilt evidence cannot be used to prove that a criminal homicide was murder rather than manslaughter, it is admissible, as here, on the question whether a criminal homicide had been committed." *Commonwealth* v. *Epsom*, 399 Mass. 254, 259 (1987), citing *Commonwealth* v. *Blaikie*, 375 Mass. 601, 605-606 (1978).

The "might tend to show actual guilt" language has appeared, without disapproval by the Supreme Judicial Court or this court, in instructions given by trial judges in recent cases. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 648-650 (1991) (holding that the judge correctly instructed the jury that they could consider false statements to the police as evidence of consciousness of guilt and whether the feelings of guilt might tend to show actual guilt on the charges); *Commonwealth* v. *Vaughn*, 43 Mass. App. Ct. 818, 826 n.3 (1997). Compare *Commonwealth* v. *Estrada*, 25 Mass. App. Ct. 907, 908 (1987) (reversing a conviction because of the judge's refusal to give requested supplemental *Toney* instruction, where consciousness of guilt played a significant role in the conviction).

In light of the entire charge and the other evidence of guilt presented, the jury were able to consider the consciousness of guilt evidence and decide whether to weigh it with other evidence of guilt presented. See *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 400 (1987). The prosecutor's statements in her closing argument only encouraged the jury to do likewise.[3] Furthermore, the judge made it clear in his instructions to the jury that the Commonwealth had the burden of proving that the discharge of the rifle was not accidental. There is no likelihood that the jury understood that they could convict the defendant solely on the consciousness of guilt evidence. Our cases do not require more than the judge provided. "We do not require that any specific words be spoken in a jury instruction. Judges need not deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words." *Commonwealth* v. *Torres*, 420 Mass. 479, 484 (1995) (citations omitted).

---

[3]"Based upon [the ballistics] evidence, there should be no question this was no accident. In every explanation the defendant says it's an accident. . . . Yet, every explanation about how this was an accident defies the physical evidence. The path that the bullet took, the stippling to the face, the blood spatter. . . . Based upon [the] three versions of what the defendant said, there should be no question that this was not an accident.

". . . .

"The evidence proves that at the time of this shooting, the defendant had the mental state — malice aforethought — which distinguishes, is the difference between, murder and manslaughter.

"The defendant's mental state at the time relates to the evidence in a case regarding their relationship — how they were getting along, what his possible motives towards [the victim] were at that time, his words and his conduct around the time of the shooting."

2. *Malice and involuntary manslaughter instructions.* The defendant argues that the jury instructions on the third prong of malice and involuntary manslaughter were erroneous and diluted the distinction between murder and involuntary manslaughter. First, the trial judge gave the following instructions on malice aforethought:

> "Malice aforethought refers to a frame of mind which includes not only anger, hatred and revenge, but also every unlawful and unjustifiable motive. . . . If the circumstances surrounding the killing disclose that death flowed from a purposeful, selfish, wrongful motive, as distinguished from the frailty of human nature, then there can be malice aforethought."

The "frame of mind" language has since been disapproved because it "might lead a jury to believe that a selfish, wrongful mood might be enough to show malice." *Commonwealth* v. *Johnson*, 422 Mass. 420, 428 (1996). Second, the trial judge defined third prong malice as "an unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily harm will follow." This is not a correct instruction. The third prong of malice "can only be satisfied by proof that 'there was a plain and strong likelihood of death.' " *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995), quoting from *Commonwealth* v. *Sires*, 413 Mass. 292, 303 n.14 (1992). Third, the defendant argues that the trial judge's instructions on involuntary manslaughter that referred to wanton and reckless conduct as a disregard of "probable harmful consequences to another" and disregard of "grave danger" were too diluted for the jury to differentiate them from "grievous bodily harm" in the malice instruction.

Because the defendant failed to object at trial, our review is limited to whether the judge's instructions gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). They did not. "[T]he judge's instruction[s] to the jury, considered as a whole, adequately explained the concept of malice aforethought." *Commonwealth* v. *Morgan*, 422 Mass. 373, 382 (1996), and cases cited.

The Supreme Judicial Court has made it clear that the now obsolete "frame of mind" language does not create a substantial

likelihood of a miscarriage of justice because "instructions on malice that include both the three prong definition and an obsolete definition adequately convey the meaning of malice to the jury." *Commonwealth v. Murphy*, 426 Mass. 395, 401 (1998). Further, the erroneous charge that third prong malice includes "a plain and strong likelihood that death or grievous bodily harm would follow" is harmless error where the " 'evidence does not warrant a finding of a risk of harm less than a strong likelihood of death.' " *Id.* at 401, quoting from *Commonwealth v. Fryar*, 425 Mass. at 248. See *Commonwealth v. Caines*, 41 Mass. App. Ct. 812, 816-817 (1996) (holding that "frame of mind" language coupled with erroneous third prong malice instructions did not create a substantial risk of a miscarriage of justice where evidence created "a clear and plain likelihood of death").

"The use of a deadly weapon, such as a gun, generally supports a finding of malice." *Commonwealth v. Cohen*, 412 Mass. at 379, citing *Commonwealth v. Robertson*, 408 Mass. 747, 756 (1990). The evidence showed that the victim was shot at a forty-five degree angle within twelve inches of her face.[4] "A reasonable jury could not fail to recognize that the defendant's [shooting] created a clear and plain likelihood of death." *Commonwealth v. Caines*, 41 Mass. App. Ct. at 817. Contrast *Commonwealth v. DiRenzo*, 44 Mass. App. Ct. 95, 100 (1997) (reversing convictions where it was unclear whether the jury found the defendants guilty of second degree murder because they concluded that prior to one of the defendants striking the fatal blows to the victim's head with a baseball bat, there was a "plain and strong likelihood of serious bodily injury" to the victim resulting from the joint attack on him by means of fists and feet).

The trial judge correctly gave the instruction that involuntary manslaughter was based on "wanton and reckless conduct." See *Commonwealth v. Welansky*, 316 Mass. 383 (1944). Accordingly, the judge also stated that such conduct must involve "a high degree of likelihood that substantial harm will result to another." See *Commonwealth v. Sneed*, 413 Mass. 387, 393

---

[4]This circumstance distinguishes this homicide from that in *Commonwealth v. Vizcarrondo*, 427 Mass. 392, 397-398 (1998). By its verdict the jury here found that the defendant acted intentionally. One who deliberately shoots another in the face with a rifle at a range of twelve inches knows, as matter of law, that there is a plain and strong likelihood of death.

(1992) ("involuntary manslaughter requires a showing that the defendant knew, or should have known, that his conduct created a high degree of likelihood that substantial harm would result to another"). The standard of proof given clearly distinguished a level of risk of physical harm below the level instructed in the three prongs of malice.

"Where the jury found that the defendant intended to injure the victim by shooting him point-blank in the chest, there is no doubt he intended serious or grievous bodily injury." *Commonwealth* v. *Van Liew*, 38 Mass. App. Ct. 934, 935 (1995). In *Van Liew*, the defendant stood no more than two feet from the victim, pointed a gun at the victim's chest, and fired. See *ibid.* As in the instant case, the main issue at trial was whether the shooting was intentional or accidental. We held that the jury could not have confused the difference between murder in the second degree and involuntary manslaughter where the judge used phrases such as " 'high degree of likelihood [of] substantial harm,' the 'gravity of the danger to the other person,' 'substantial harm,' and 'serious bodily injury or death.' " *Ibid.* Here, the trial judge used the words "grave danger to others," "gravity of the danger," and "substantial harm." The judge made it clear that "malice may not be inferred if the use of a dangerous weapon was unintentional or accidental." The judge instructed that involuntary manslaughter is an unintentional killing committed by an intentional act.[5] Furthermore, the judge instructed, several times throughout the charge, that the defendant was entitled to a verdict of not guilty if the jury found that the shooting was an accident or if the Commonwealth did not prove beyond a reasonable doubt that the shooting was not an accident. See *Commonwealth* v. *Lowe*, 391 Mass. at 111. Based upon the evidence presented and the instructions taken as a whole, we see no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Van Liew*, 38 Mass. App. Ct. at 935.

The defendant in passing argues that, if the issue of the

---

[5]The judge's instructions on involuntary manslaughter were, in part:

"The law recognizes a distinction between an intentional killing committed by an intentional act, which is murder, and an unintentional killing committed by an intentional act which constitutes such a disregard for the probable harmful consequences to another as to amount to wanton and reckless conduct, which we refer to in the law as 'involuntary manslaughter.' "

diluted standard between malice and wanton and reckless was not properly preserved for review, the failure of defense counsel to object to the error constituted ineffective assistance of counsel. Not so. We have determined that the alleged error was not preserved, and also did not pose a substantial risk of a miscarriage of justice. "Consequently, the defendant cannot prevail on appeal by asserting the ineffectiveness of his counsel on the same issues." *Commonwealth* v. *Cohen*, 412 Mass. at 389, citing *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

*Judgment affirmed.*