Commonwealth *vs.* David Stroyny.

Bristol. October 5, 2001. - January 18, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Cordy, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Voir dire, Assistance of
counsel, Psychiatric examination, Voluntariness of statement, Instructions
to jury, Disclosure of evidence, Capital case. *Evidence,* Prior misconduct,
Hearsay, State of mind, Relevancy and materiality, Threat, Spontaneous ut-
terance, Cumulative evidence. *Constitutional Law,* Assistance of counsel.
*Privileged Communication. Malice. Homicide.*

At a murder trial, the judge did not abuse his discretion in refusing two
requests by the defendant to question jurors individually, where the
defendant pointed to no specific circumstances to suggest that any extrane-
ous issues may have adversely affected any juror, and where the decision
to accept the declaration of a juror that he or she was disinterested was
within the broad discretion of the judge. [638-639]

At a murder trial, testimony of a police officer that the defendant had contacted
the victim after the victim tried to break off their relationship, while
improperly admitted in evidence, did not substantially sway the defendant's
judgment of conviction in that it was cumulative of abundant other admis-
sible evidence. [639-641]

At a murder trial, testimony of witnesses concerning the defendant's prior bad
acts that was relevant to the issues of the defendant's motive and intent to
kill the victim and to his claim that he lacked the requisite mental capacity
to commit the crime with which he was charged, was admissible to show
the hostile relationship between the parties, or admissible as evidence of
"abuse, discord, and harassing conduct between the defendant and the
victim that demonstrated their respective states of mind," or admissible as
a declaration of intention offered to prove that the defendant had a
particular intent (state of mind) and that he later carried out his intent at
the time of the murder. [641-642]

At a murder trial, testimony of a police officer that the victim was screaming
and hysterical when she told him that the defendant had just assaulted her
was properly admitted in evidence as spontaneous and relevant. [642-643]

At a murder trial, the admission in evidence of certain challenged testimony
did not give rise to a substantial likelihood of a miscarriage of justice.
[643-644]

At a murder trial in which testimony of some thirteen witnesses indicated that
the relationship between the defendant and the victim lasted but ten months,
during which time the defendant repeatedly attacked, beat, and threatened
the victim, it would not have been an abuse of discretion, had defense
counsel objected to any of the testimony on the ground that the repetition

was unduly prejudicial, which he did not, for the judge reasonably to have deemed the evidence probative of the rapid decline of the relationship, and not unduly prejudicial. [644]

In a murder case in which a psychiatric expert for the Commonwealth prematurely exposed to the prosecutor, without permission from the judge, some of the defendant's statements made during his court-ordered examination, dismissal of the indictment for murder was not warranted, where there was no prejudice to the defendant, given that the information provided the prosecutor by the expert had been brought out by the defendant in his own direct testimony. [644-646]

A judge in a murder case did not err by failing to conduct, sua sponte, a voir dire for voluntariness of statements made by the defendant at a hospital immediately after the killing, to a nurse and a police officer, and by failing to give a humane practice instruction, where there was no evidence of a substantial claim of involuntariness, and where voluntariness was not a live issue at trial. [646-647]

A judge in a murder case did not err in concluding that defense counsel's failure to object, on grounds of privilege and relevancy, to the testimony of a licensed social worker from whom the defendant had sought counseling prior to the killing, did not constitute ineffective assistance of counsel, where the testimony was probative of the defendant's contested mental state, where defense counsel's use of the testimony to advance the defense that the defendant did not have the requisite mental state to commit murder was a reasonable tactic, and where the admitted testimony could not be challenged on appeal on a ground not relied on at trial. [647-648]

At a murder trial, although the judge improperly included "grievous bodily harm" language in his definition of the third prong of malice, used "frame of mind" language to define malice, and failed to instruct on the relationship of mental impairment to the third prong of malice, in the circumstances of this case, there was no prejudice to the defendant. [648-650]

At a murder trial in which the jury convicted the defendant of murder in the first degree on the theory of extreme atrocity or cruelty, the judge gave correct instructions to the jury, and a reasonable juror would have understood that the Commonwealth bore the burden of proving at least one of the factors identified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983), beyond a reasonable doubt, and there was ample evidence to do so. [650-651]

The defendant in a murder case failed to bear the burden under G. L. c. 278, § 33E, of showing that his counsel's alleged errors were "likely to have unfairly influenced the jury's verdict." [651-653]

INDICTMENT found and returned in the Superior Court Department on June 23, 1992.

A pretrial motion to dismiss the indictment or, in the alternative, to suppress evidence was heard by *Walter E. Steele*, J.; the case was tried before *John M. Xifaras*, J., and a motion for a new trial was heard by him.

*Scott P. Curtis* for the defendant.

*Catherine B. Sullivan Ledwidge*, Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. In January, 1995, the defendant was convicted of murder in the first degree on the theory of extreme atrocity or cruelty.[1] Represented by new counsel, the defendant filed a motion for a new trial in April, 2000, which was denied by the trial judge after a hearing. The defendant's appeals from the jury verdict and the denial of his motion for a new trial have been consolidated.

The defendant argues that the judge failed to conduct an adequate voir dire of the jury venire, and failed to conduct, sua sponte, a voir dire on the voluntariness of several of the defendant's out-of-court statements. He challenges on various grounds the admission in evidence of the testimony of several witnesses, described below. He also challenges various instructions to the jury. Finally, he makes a claim of ineffective assistance of trial counsel, arising primarily from these same claims of error. We affirm the conviction and the judgment denying the defendant's motion for a new trial. We conclude that there is no basis for granting relief under G. L. c. 278, § 33E.

1. *Facts.* The jury could have found the following facts. Ten months prior to the murder, the victim — a single mother of three children — and the defendant began dating. Soon thereafter they began to live together. Their relationship quickly deteriorated. On numerous occasions the defendant threatened and abused the victim, both physically and verbally. He mentioned to others that he might hurt or kill her. The victim attempted to terminate the relationship, and during the ten months that she knew him, she obtained two protective orders against the defendant.

The abuse culminated in the victim's death on May 12, 1992. On that morning, the defendant entered the victim's apartment by battering down the front door. A fight ensued, during which

---

[1] The defendant was also charged with assault and battery of the victim, G. L. c. 265, § 13A, and violation of a protective order, G. L. c. 209A, § 7. He pleaded guilty to both charges during the trial, but before the case was submitted to the jury. Those guilty pleas were placed on file.

the victim was brutally assaulted. The defendant testified that he punched the victim in the face "with everything [he] had," knocking her down, but that he could not recall stabbing her. He testified that, when he saw the victim lying stabbed on the ground, he cut his wrists, walked down the street to a public telephone, and called his father, who took him to a hospital. The defendant was apprehended at the hospital by the Taunton police.

The medical examiner testified to the ferocity of the attack on the victim. She had suffered three stab wounds to her back, one to her right elbow, a bruise to the right side of the head, a laceration and fracture of her nose, two fractured front teeth, a scrape on her left forearm, and a bruised right buttock. One of the fractured nose bones tore through the skin, causing the laceration on her nose. Each of the stab wounds to the victim's back penetrated at least five inches, entering her chest cavity and injuring her right lung and heart. One stab wound cut through an entire rib; another almost severed another rib. The examiner testified as to the considerable force necessary to cause such injuries. The medical examiner opined that the victim died from the three stab wounds to her back, each of which was fatal.

At trial, the primary contested issue was the defendant's intent at the time of the killing. The defendant admitted he had killed the victim, but claimed he could not remember delivering the killing blow or blows. His defense was lack of criminal responsibility and mental impairment.

2. *Voir dire of the jury venire.* Defense counsel requested that prospective jurors be questioned individually concerning any bias they might have as a result of pretrial publicity of the killing.[2] He also asked that prospective jurors be questioned individually as to whether they would tend to believe the testimony of a police officer over a civilian witness. The judge refused both requests, which the defendant now claims was an

---

[2]The defendant was permitted to enlarge the record to include copies of several newspaper articles that appeared in different newspapers between 1992 and 1994. While the articles concern the case, they do not evidence the extensive media coverage encountered in other cases. See and compare *Commonwealth* v. *James*, 424 Mass. 770, 775 (1997).

abuse of discretion sufficient to warrant a new trial or reduction in the verdict.

During empanelment, the judge asked the jurors the questions required by G. L. c. 234, § 28, as well as numerous other questions regarding their impartiality. Questioned as a group, he asked the jurors whether they had any knowledge of the case from any pretrial publicity, and then questioned individually those jurors who responded affirmatively. He seated only those who informed him that they could be fair and impartial. He followed this same procedure with respect to determining whether any prospective juror would view the testimony of a police officer more favorably than any other witness. More was not required.

The purpose of inquiries directed to prospective jurors is not to determine to what views they may have been exposed; it is to determine whether jurors will set aside their own opinions, weigh the evidence (excluding matters not properly before them), and follow the instructions of the judge. *Commonwealth v. Subilosky*, 352 Mass. 153, 158-160 (1967). Thus a juror need not be "totally ignorant of the facts and issues involved." *Commonwealth v. Jackson*, 388 Mass. 98, 108 (1983), quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975). Here the defendant points to no specific circumstances to suggest that any extraneous issues may have adversely affected any juror. Whether to accept the declaration of a juror that he or she is disinterested lies within the broad discretion of the trial judge. *Commonwealth v. Subilosky, supra* at 159. The judge did not abuse his discretion.

3. *Evidence of prior bad acts and alleged hearsay.* The defendant challenges the admission in evidence of portions of the testimony of thirteen witnesses regarding his prior bad acts or threats toward the victim, as well as testimony he claims is hearsay. Combined with evidence he maintains was improperly admitted concerning the victim's state of mind, the defendant argues that he was convicted because the jury were led to believe he was a cruel and abusive person, not for any act he committed.

At trial the defendant objected to the testimony of only one

of these witnesses, a Taunton police officer.[3] In his motion for a new trial he argued that he had been denied the effective assistance of counsel and, in that connection, the defendant pointed to aspects of the testimony of another eleven witnesses to which trial counsel had not objected as indicating "an overwhelming number of prejudicial hearsay statements" improperly admitted. He raises for the first time here his challenge to the testimony of a thirteenth witness.

The motion judge approached the various claims of ineffective assistance of counsel in two ways. First, with respect to some of the evidence that the defendant claimed was erroneously admitted, the judge simply rejected the defendant's claim of ineffectiveness by ruling that counsel's failure to object to the evidence did not satisfy the constitutional standard by which ineffectiveness is measured, see *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), without addressing the underlying question whether the evidence was properly admitted. As to that evidence, we apply the substantial likelihood of a miscarriage of justice standard of review. *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992). With respect to certain other evidence, however, the judge did more than simply reject the defendant's claims of counsel's ineffectiveness; he affirmatively addressed the substantive merits of the underlying evidentiary issues. He rejected the claims of ineffective assistance of counsel based on the failure to object because, he concluded, the evidence was admissible and properly admitted. By reaching the merits of the underlying issues, the judge resurrected the otherwise unpreserved claims of error. We review those claims as if properly preserved by applying the prejudicial error standard of review. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 n.2, cert. denied, 525 U.S. 1007 (1998). *Commonwealth* v. *Hallet*, 427 Mass. 552, 552-555 (1998).

(a) We consider first for prejudicial error the testimony to which the defendant objected at trial and the eight claims of error that the motion judge addressed on the merits. We conclude

---

[3]The defendant objected to the testimony of a Taunton police officer concerning a statement made to him on April 23, 1992, by the victim that the "she had been beaten up" by the defendant.

that the testimony of only one witness, Officer Lyle Paulson, was erroneously admitted.

Officer Paulson testified that on April 9, 1992, he stopped the defendant based on information he had received that the defendant was in an area near the victim's residence and had telephoned her. On that date there was no protective order in effect against the defendant, a protective order having been vacated the day before. The motion judge concluded that the evidence was properly admitted "to show the relationship of the parties," citing *Commonwealth* v. *Lodge*, 431 Mass. 461, 470 (2000). The evidence should not have been admitted. The *Lodge* case concerned evidence of a victim's "state of mind" as proof of the defendant's "motive" to kill. Paulson's testimony did not throw any light on the victim's state of mind, or that her state of mind was known to the defendant. See *Commonwealth* v. *Seabrooks*, 425 Mass. 507, 512-513 & n.7 (1997), *S.C.*, 433 Mass. 439 (2001). We nevertheless conclude that "stripping the erroneous action from the whole," the judgment of conviction was not "substantially swayed" by the error. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1985). Cross-examination by defense counsel made clear to the jury that Officer Paulson knew that there was no existing protective order against the defendant. Stripped of any taint of illegal activity by the defendant, the officer's testimony that the defendant had contacted the victim after she tried to break off their relationship was cumulative of abundant other admissible evidence. See *Commonwealth* v. *Andrade*, 422 Mass. 236, 241-242 (1996).

As to the challenged testimony of the other witnesses that we review for prejudicial error, the motion judge correctly concluded that none was admitted in error. Evidence of prior bad acts may not, of course, be offered to prove bad character or criminal propensity, but evidence of other wrongdoings by the defendant, if relevant, may be admissible for another purpose where its probative value is not substantially outweighed by the danger of prejudice. *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 370 (1997), and cases cited; *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991). In this case, the challenged evidence was relevant to the issues of the defendant's motive and intent

to kill the victim as she resisted his entreaties to resume their relationship, see *Commonwealth* v. *Rosenthal*, 432 Mass. 124, 127-128 (2000); *Commonwealth* v. *Cormier*, 427 Mass. 446, 450 (1998), and to his claim that he lacked the requisite mental capacity to commit the crime with which he was charged. See *Commonwealth* v. *Ashman*, 430 Mass. 736, 741 (2000).

Testimony of those witnesses who had observed directly the defendant's previous acts of abuse toward the victim is not hearsay, and was admissible to show the hostile relationship between the parties, *Commonwealth* v. *Seabrooks*, *supra* at 512 n.6; *Commonwealth* v. *Fordham*, 417 Mass. 10, 23 (1994).[4] The testimony of witnesses who overheard yelling, swearing, items being thrown, and fighting between the defendant and the victim is similarly admissible, as evidence of "abuse, discord, and harassing conduct between the defendant and the victim that demonstrated their respective states of mind." *Commonwealth* v. *Cruz*, 424 Mass. 207, 212 (1997). Evidence of threats the defendant made to the victim that he would harm her was admissible; it is not hearsay offered in evidence to prove the truth of a fact, but a declaration of intention offered to prove that the defendant had a particular intent (state of mind) and that he later carried out his intent at the time of the murder.[5] *Commonwealth* v. *Fernandes*, 427 Mass. 90, 95 (1998). *Commonwealth* v. *Wampler*, 369 Mass. 121, 123 (1975), citing *Commonwealth* v. *DelValle*, 351 Mass. 489, 491-492 (1966). We also note that much of the challenged testimony was substantive evidence of the charged violation of a protective order to which the defendant had not pleaded guilty at the time it was admitted. See note 1, *supra.*

The defendant did object at trial to a police officer's testimony

---

[4]Leslie Williams testified that she saw a man, later identified by a Taunton police officer as the defendant, strike and kick the victim on April 23, 1992. Sheryl and Stephen Corey testified about an incident on May 2, 1992, when they had to walk between the victim and the defendant to protect her. Robin Totten testified that she saw the defendant lunge at the victim in a bar before he was restrained by others. Maria Roos, a neighbor, testified she saw the defendant dragging the victim by the hair.

[5]Robin Totten testified that the defendant yelled at her and yelled at the victim about her children, and that she heard the defendant tell the victim that he was "going to get her." Sheryl Corey testified to the same effect about another such incident.

that on April 23, 1992, the victim told the officer that the defendant had beaten her. See note 3, *supra*. The statement would not be excluded by the hearsay rule if its utterance was sufficiently spontaneous to negate premeditation or possible fabrication, and if it tended to qualify, characterize, and explain the underlying event. *Commonwealth* v. *Marshall*, 434 Mass. 358, 363-365 (2001); *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000). The officer testified that the victim was screaming and hysterical when she told him that the defendant had just assaulted her. The motion judge was correct to conclude that the statement was spontaneous, relevant, and admissible.

(b) The defendant's challenges to the testimony of the remaining four witnesses — the substantive merits of three were not affirmatively addressed by the motion judge[6] and one is presented here for the first time — do not give rise to a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). The testimony of two witnesses, the victim's mother and the victim's brother, was admissible because they each had directly observed the defendant's threats and physical abuse of the victim.[7] See *Commonwealth* v. *Seabrooks*, *supra* at 512 n.6 (observed acts); *Commonwealth* v. *Fernandes*, *supra* at 95 (threat to "get" victim). Rosemary Larkin's testimony that the defendant visited the victim's daughter's school to see whether the daughter was present on the morning of May 12, 1992, was both cumulative of the defendant's own testimony and admissible to show that the defendant left the school at a time that was consistent with his killing the victim later that morning. Finally, a Taunton police officer's testimony that he observed the victim with cuts, bruises, and abrasions on her face on March 25, 1992 — the

[6]The motion judge disposed of these claims by concluding that defense counsel's failure to object to the evidence did not meet the constitutional standard by which ineffective assistance is measured. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

[7]The victim's mother, for example, testified to an incident in which she saw the defendant push the victim against a car and threaten to kill her. The victim's brother testified that he saw the defendant beating the victim at his mother's house and that he heard arguments in which the defendant threatened to kill the victim.

day on which she obtained her first protective order against the defendant — was admissible as evidence of prior altercations between the defendant and the victim. See *Commonwealth* v. *Rosenthal, supra* at 128; *Commonwealth* v. *Ashman, supra* at 741. The challenged testimony was all properly admitted.

(c) The defendant suggests that the prejudice from the cumulative effect of the testimony from so many witnesses substantially outweighs any probative value of their testimony. In this case, the relationship between the defendant and the victim lasted but ten months, during which time the defendant repeatedly attacked, beat, and threatened the victim. Had counsel objected to any of the testimony on the ground that the repetition was unduly prejudicial, which he did not, it would not have been an abuse of discretion for the judge reasonably to have deemed the evidence probative of the rapid decline of the relationship, and not unduly prejudicial. See, e.g., *Commonwealth* v. *Marrero*, 427 Mass. 65, 67-68 (1998), citing *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269-270 (1982) (prosecution "entitled to present as full a picture as possible of the events surrounding the incident itself"). In this case the defendant's generalized claim has no greater merit than his separate attacks on the testimony of the thirteen witnesses called by the Commonwealth to describe to the jury their observations during the period before the killing.

4. *Court-appointed psychiatric expert.* Prior to trial the defendant gave notice of his intention to bring a defense of lack of criminal responsibility and, on an order of the court, Dr. Michael Mufson, the Commonwealth's expert, examined the defendant. Dr. Mufson then prematurely disclosed to the prosecutor, without permission from the judge, some of the defendant's statements made during his court-ordered examination.[8] Before trial the defendant moved to dismiss the indictments or, alternatively, to suppress Dr. Mufson's testimony. A Superior Court judge, who was not the trial judge,

[8]Dr. Mufson informed the prosecutor that the defendant had forced his way into the victim's apartment when he heard children crying; there was confusion over whether the defendant had broken into the apartment; the defendant and the victim had discussed their relationship and their differences; that they had engaged in sexual activity that had stopped; and that the victim had said something to the defendant, which triggered the fatal attack. Dr. Mufson also

concluded that Dr. Mufson's disclosures to the prosecutor had violated the defendant's rights, see *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 760 (1977), and Mass. R. Crim. P. 14 (b) (2) (B) (ii), 378 Mass. 874 (1979), but denied the motion. The defendant now claims that both the disclosure and denial of his motion prejudiced his trial.

We do not sanction the conduct of the Commonwealth's expert or the prosecutor. To the extent that Dr. Mufson was not aware that information obtained by him and any report prepared by him from the defendant could not be disclosed until a judicial determination that the defendant had waived his privilege against self-incrimination,[9] the prosecutor should immediately have terminated any conversation with Dr. Mufson when it became clear that he was divulging communications by the defendant. See *Blaisdell* v. *Commonwealth*, *supra*; Mass. R. Crim. P. 14. The issue we must decide, however, is whether the relief sought by the defendant is warranted.

The motion judge correctly decided that dismissal of the indictment was not warranted. The defendant pointed to no persuasive authority for so Draconian a measure, and the judge correctly determined that there were other means available at trial that would protect the defendant from any improper use against him of statements he made to Dr. Mufson.

At trial, the defendant testified on his own behalf. He argues that the disclosure of his statements to Dr. Mufson afforded the prosecutor an advantage on cross-examination that "devastated" his credibility, "undermined" his defense of provocation and mental impairment, and "likely had a material effect on the jury." The information provided by Dr. Mufson to the prosecutor, however, had been brought out by the defendant in his own direct testimony. The prosecutor's cross-examination could have been based on the defendant's statements at trial, rather than on the prosecutor's conversation with Dr. Mufson, several months earlier. Moreover, the defendant's own expert testified to an opinion based on the same statements made by the defendant to

told the prosecutor that the defendant was "not stupid" and had asked "intelligent and appropriate questions."

[9]The motion judge concluded, without explanation, that "the violation of the defendant's rights was unintentional."

him. Even if the prosecutor's use at trial of the defendant's statements to Dr. Mufson was improperly derived from his earlier conversation with Dr. Mufson, there was no prejudice to the defendant. See *Commonwealth* v. *Harvey*, 397 Mass. 803, 808-809 (1986).

5. *Voir dire of the voluntariness of the defendant's statements.* Immediately after the murder the defendant made incriminating statements at Morton Hospital in the presence of a nurse and a police officer. They both testified.[10] The defendant claims here, as he did in his motion for a new trial, that the judge erred by failing to conduct, sua sponte, a voir dire for voluntariness of these statements, and by failing to give a humane practice instruction. The judge affirmatively addressed the substantive merits of the claim, which we review for prejudicial error. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 (1998).

In the absence of a request from counsel, a judge is obliged sua sponte to conduct a voir dire only where there is evidence of a substantial claim of involuntariness, see *Commonwealth* v. *Murphy*, 426 Mass. 395, 398 (1998), and where voluntariness is a live issue at the trial. *Commonwealth* v. *Tavares*, 385 Mass. 140, 150, cert. denied, 457 U.S. 1137 (1982), quoting *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 (1978). *Commonwealth* v. *Pavao*, 46 Mass. App. Ct. 271, 273-274 (1999). There was insufficient evidence to mandate such an inquiry in this case. There was evidence that at the hospital the defendant was greatly distressed. He was crying and screaming in a high pitch, his voice was "deep and angry," and he appeared distressed and agitated. A nurse testified that he was "crying and moaning, moaning like a real agonal moaning." The treating physician's assessment indicated "positive depression." But distress, even profound distress, does not necessarily mean that a defendant is incapable of withholding any information he conveys. Cf. *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991), citing *Commonwealth* v. *Paszko*, 391 Mass. 164, 177

[10]The nurse testified she had the following conversation with the defendant: "David, I know that you feel terrible right now, but this is not the end of the world." He responded, "Well, that's what you think." The officer testified he overheard the defendant say to his father: "I let you all down. Get me out of here."

(1984) (statement made by one who "by dint of physical or mental impediments is incapable of withholding the information conveyed" cannot be used as evidence against him). While there was evidence that the defendant had ingested marijuana and Valium, there was nothing to suggest that his mental condition had been affected. There was no evidence that he suffered any ill effects from the injuries to his wrists, which were no longer bleeding, or that any injury impaired his mental function. The nurse did not speak to the defendant until forty-five minutes after he was admitted, by which time he had begun to recover from his injuries. See *Commonwealth* v. *Allen*, 395 Mass. 448, 457-458 (1985) (defendant's statements voluntary although he was recovering from self-inflicted gunshot wound to brain).

In these circumstances a humane practice instruction was also not required. Even if requested, a judge has no duty to ask the jury to pass on voluntariness unless it is made a live issue at trial. See *Commonwealth* v. *Benoit, supra* at 511, and cases cited. The evidence of the defendant's mental state at the hospital, distinguished from his signs of distress, did not make the voluntariness of his statements "live." There was no prejudice to the defendant.

6. *Testimony of licensed social worker.* A licensed social worker from whom the defendant sought counseling at Morton Hospital testified at trial, without objection. The social worker had a single interview with the defendant some six weeks before the killing. In his motion for a new trial the defendant claimed that trial counsel was ineffective for failing to object to her testimony on grounds of privilege, G. L. c. 112, § 135B, and relevancy. The motion judge concluded that counsel's failure to object did not constitute ineffective assistance of counsel, pointing to two exceptions to the social worker privilege and to the fact that the evidence was relevant to the defendant's defense. The evidence was admitted without error.

General Laws c. 112, § 135B (*c*), provides that in any proceeding "in which the client introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between the client and the social worker be

protected," the social worker may disclose the contents of the communication. In this case the defendant's mental condition was a critical aspect of his defense, and defense counsel introduced the issue in his opening statement to the jury. The social worker's testimony was certainly probative of the defendant's contested mental state concerning the crimes with which he was charged: her evidence tended to show not only the defendant's anger and thoughts about killing someone, but also that he was coherent, oriented, and knew right from wrong. Had the defendant objected at trial, it would not have been error for the judge to allow the social worker to testify.

Moreover, defense counsel used the social worker's testimony to advance his defense that he did not have the requisite mental state to commit murder. He argued that the social worker's testimony evidenced his attempt to obtain help, and his loss of control, in the weeks leading up to the murder. The tactic was reasonable, and the admitted testimony may not be challenged on appeal on a ground not relied on at trial. See *Commonwealth v. Nardone*, 406 Mass. 123, 126-127 (1989).

7. *Malice instructions.* The defendant points to three claims of error in the jury instructions on malice, that the judge improperly (a) included "grievous bodily harm" language in his definition of the third prong of malice; (b) used "frame of mind" language to define malice; and (c) failed to instruct on the relationship of mental impairment to the third prong of malice. The motion judge affirmatively addressed the substantive merits of the claim. We review the instructions, if erroneous, for prejudice to the defendant's trial. *Commonwealth v. Vinnie, supra* at 163.

(a) It was error for the trial judge to include "grievous bodily harm" language in his instructions on the third prong of malice. *Commonwealth v. Sires*, 413 Mass. 292, 303 n.14 (1992). See *Commonwealth v. Johnson, ante* 113, 121 (2001); *Commonwealth v. Vizcarrondo*, 427 Mass. 392, 396 n.5 (1998), *S.C.*, 431 Mass. 360 (2000). In the circumstances of this case, however, there was no prejudice to the defendant. The defendant forcefully stabbed the victim three times in the back, each wound penetrating at least five inches. The medical examiner testified that any one of them would have been fatal in a matter

of minutes. The evidence did not warrant a finding of a risk of a harm less than a strong likelihood of death. See *Commonwealth v. Murphy, supra* at 401; *Commonwealth* v. *Fryar,* 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997).

(b) The charge concerning malice was also defective because it contained "frame of mind" language disapproved in *Commonwealth* v. *Eagles,* 419 Mass. 825, 836 (1995).[11] We look to the instructions as a whole to determine whether reversal is warranted. *Commonwealth* v. *Carrion,* 407 Mass. 263, 270-271 (1990); *Commonwealth* v. *Nieves,* 394 Mass. 355, 360 (1985). The judge's instructions strongly and repeatedly emphasized the Commonwealth's burden that, absent malice, the defendant could be convicted of manslaughter and not murder.[12] The nature of the killing, repeated stabbings toward the victim's heart and lungs, displayed malice "in the plainest sense." *Commonwealth* v. *Pike,* 431 Mass. 212, 216 (2000). See *Commonwealth* v. *Dahl,* 430 Mass. 813, 826 (2000) ("frame of mind" language could not have "any impact on the jury's decision to convict the defendant in view of the nature of the killing, which was committed, beyond any reasonable doubt, with no less than an intent to inflict injuries which would cause the victim's death"). The erroneous instruction does not mandate a new trial.

(c) Finally, the defendant claims that the judge erred by failing to instruct that a defendant's mental impairment must be considered on the third prong of malice. Omission of such an instruction, if requested, is error. See *Commonwealth* v. *Sama,* 411 Mass. 293, 298-299 (1991). However, evidence of mental impairment is relevant only if it concerns the defendant's knowledge of the killing; where there is no evidence that the defendant did not know the circumstances of the killing, the omission of a *Sama* instruction does not constitute reversible error. See *Commonwealth* v. *Sanna,* 424 Mass. 92, 101-102

---

[11]The judge instructed: "If the circumstances attending a killing disclose that death flows from a purposeful selfish wrongful motive as distinguished from the frailty of human nature, then that would constitute malice aforethought."

[12]Although the judge gave an erroneous instruction on the third prong of malice by including a reference to "grievous bodily harm," this reference could not have affected the jury's verdict because, as we have said, the attack was inherently deadly.

(1997). The question, therefore, is "whether there [was] evidence [that] would warrant a jury finding that the defendant was unaware of the circumstances of the homicide at the time of the act." *Id.* at 102.

Here, the evidence was clear that the defendant was fully cognizant of the circumstances surrounding the killing.[13] The only evidence arguably to the contrary was his testimony that he could not remember what happened between the time he punched the victim and broke her nose, and when he saw her dead on the floor. In light of the detail with which the defendant recalled the sequence of events up to and following his ferocious attack on the victim, the omission of the mental impairment instruction on the third prong of malice did not prejudice his trial.

8. *Extreme atrocity or cruelty instructions.* The jury convicted the defendant of murder in the first degree on the theory of extreme atrocity or cruelty. The defendant claims that the judge erred in his instructions by failing to require that the Commonwealth prove beyond a reasonable doubt the presence of at least one of the factors we identified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). Because trial counsel made no objection, we consider whether the error, if any, created a substantial likelihood of a miscarriage of justice.

The judge instructed that, in making their decision as to the element of extreme atrocity or cruelty, the jury were to "consider a number of facts," and immediately before he instructed on the *Cunneen* factors, he stated: "[t]hese factors include but are not limited to the following . . . ." However, after the judge delineated the *Cunneen* factors, he emphasized to the jury that the Commonwealth "must" prove one or more of the *Cunneen* factors in order to return a verdict of guilty on murder in the first degree on the theory of extreme atrocity or

---

[13]The defendant's own testimony revealed his knowledge of the participants in the fight, their locations, the sequence of actions, his movements, and his thoughts and feelings during the incident. He remembered punching the victim, knocking her down, and breaking her nose. He knew that he picked up the knife that he used to kill the victim. He remembered feeling "hurt," "like a sucker," and "enraged" moments before the killing. He also described in detail the events that followed the killing.

cruelty.[14] He stressed throughout his charge that the Commonwealth bore the burden of proof beyond a reasonable doubt. The defendant relies on *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994), *S.C.*, 427 Mass. 651 (1998), but in that case the judge instructed the jury only that extreme atrocity or cruelty "is not limited to" the *Cunneen* factors. In contrast, the judge here also gave the correct instructions to the jury, and a reasonable juror would have understood that the Commonwealth bore the burden of proving at least one of the *Cunneen* factors beyond a reasonable doubt. There was ample evidence to do so. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 30-32 (1996).

9. *Ineffective assistance of counsel.* The defendant points to numerous examples of how he was denied the effective assistance of counsel. Under G. L. c. 278, § 33E, he bears the burden of showing that defense counsel's errors were "likely to have unfairly influenced the jury's verdict." *Commonwealth* v. *Cormier*, 427 Mass. 446, 451 (1998), quoting *Commonwealth* v. *Plant*, 417 Mass. 704, 715 (1994). *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). On the defendant's motion for a new trial the judge concluded that counsel was not ineffective. We agree.

The defendant claims defense counsel's opening statement at trial was confusing and ineffective, as indicated by counsel's statements that his client had "homicidal ideation," and that he was not charged with either murder in the second degree or manslaughter, but that these were "lesser included offenses." Both of these statements were reasonable: counsel's opening argument advanced the defense theories of lack of criminal responsibility and mental impairment and his remarks, in context, were to that effect.[15] Counsel's opening statement did not unfairly influence the jury's verdict. See *Commonwealth* v. *Scott*, 428 Mass. 362, 367 (1998).

---

[14]The judge instructed: "All of these factors *must* be considered on the issue of extreme atrocity or cruelty. The Commonwealth *must* prove one or more of these factors in order to return a verdict of guilty of murder in the first degree by extreme atrocity or cruelty." (Emphasis added.)

[15]Counsel mentioned "homicidal ideation" in the context of telling the jury that he would establish that the defendant was "losing control" and that "he himself asked to be locked up four days before this killing took place." Community counselors, defense counsel said, refused to help the defendant despite

The defendant takes issue with trial counsel's cross-examination of the victim's brother, Francis Rose.[16] The judge ordered the challenged testimony struck, and forcefully instructed the jury to disregard it. He repeated this instruction in his final charge to the jury. We presume the jurors followed these instructions. *Commonwealth* v. *Helfant*, 398 Mass. 214, 228-229 (1986). Moreover, there was abundant other evidence of the defendant's attacks on the victim.

Counsel was not ineffective in failing to object to the testimony on cross-examination of Dr. Ronald Ebert, the defense's expert psychologist, who testified that the defendant told him that he viewed the victim's death as "a big fuck up" in the context of "ruining his life and [the victim's] life." The defendant claims the statement was not relevant, inflamed jury emotions, and improperly affected the verdict. We disagree. By voluntarily testifying on the issues of criminal responsibility by reason of mental impairment, and by proffering expert opinion based on his out-of-court statements, the prosecutor would have been permitted to cross-examine Dr. Ebert concerning the challenged statement. See *Commonwealth* v. *Baldwin*, 426 Mass. 105, 110 (1997), cert. denied, 525 U.S. 820 (1998); *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 766 (1977). Where there is no error in admitting the testimony, failure to object cannot amount to ineffective assistance of counsel. *Commonwealth* v. *Fredette*, 396 Mass. 455, 464-465 (1985).

The remainder of the defendant's bases for arguing that his

"their own notes at the time" that the defendant had "homicidal ideation."

He told the jury that the defendant "is not charged with a second degree murder. He is not charged with a manslaughter. Those are lesser included charges and the judge will instruct you on those at the end of all the evidence . . . . [T]his case is being dressed up and sold to you as a first degree murder case when it is not. [The defendant] committed a tragic, tragic, awful act. [The defendant] knows that at the close of this case, he will not be walking out of this courtroom to the street."

[16]Defense counsel asked the victim's brother: "[T]here was only one occasion during the term of their relationship that you ever saw [the defendant] strike your sister, isn't that true?" The witness said "yeah," but then added, "there was another time where he threw her through the window in her apartment." Defense counsel immediately established that the witness had not witnessed the second incident, and he moved to strike the answer. At sidebar, defense counsel explained that he had asked the question based on the witness's statement to the police that he had only seen the defendant strike the victim once.

trial counsel was ineffective repeat claims that we have addressed previously. As to all such claims, we have concluded that any errors did not prejudice the defendant's trial or created no substantial likelihood of a miscarriage of justice. A claim of ineffective counsel based on these same issues will not prevail. See *Commonwealth* v. *Waite*, 422 Mass. 792, 807 (1996); *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994); *Commonwealth* v. *Cohen*, 412 Mass. 375, 389 (1992).

10. *G. L. c. 278, § 33E.* We have reviewed the record. There is no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or to reduce the verdict.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*