Nowaczyk v. NHSP                    CV-97-309-JD  04/24/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Steven J. Nowaczyk</u>

     v.                               Civil No. 97-309-JD
                                      Opinion No. 2003 DNH 069
<u>Warden, New Hampshire</u>
<u>State Prison</u>


<u>O R D E R</u>


     Steven J. Nowaczyk, proceeding pro se, seeks a writ of
habeas corpus, pursuant to 28 U.S.C. § 2254.  He raises eight
grounds for relief from his state court conviction and sentence
on four counts of conspiracy to commit arson, one count of
criminal solicitation to commit arson, and two counts of witness
tampering.  The warden moves for summary judgment.  Nowaczyk
objects to summary judgment and requests an evidentiary hearing.


<u>Standard of Review</u>

     Summary judgment is appropriate in habeas proceedings, as in
other civil actions, when "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> Fed. R.
Civ. P. 81(a)(2); Rule 11 of the Rules Governing § 2254 Cases.  A

genuine issue is one that "may reasonably be resolved in favor of either party" and therefore "properly can be resolved only by a finder of fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Material facts are those which "might affect the outcome of the suit." Id. at 248. The court will not consider "'bald assertions, unsupportable conclusions, and opprobrious epithets'" or "a complainant's unsupported conclusions or interpretations of law." Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)); Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

Additional standards apply to the court's review in habeas cases. See, e.g., Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002). If the state court adjudicated the claims, raised in the habeas petition, on the merits, the federal court must decide whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision based on an unreasonable determination of the facts . . . ." § 2254(d). On the other hand, if the state court did not address the claims on the merits, the federal court reviews the decision under a de novo standard. Gruning v. Dipaolo, 311 F.3d 69, 71 (1st Cir. 2002). "Furthermore, . . . state-court determinations of factual issues 'shall be presumed

2

to be correct,' unless the petitioner rebuts the presumption 'by clear and convincing evidence.'" <u>Niland v. Hall</u>, 280 F.3d 6, 11 (1st Cir. 2002) (quoting § 2254(e)(1)).

## <u>Background</u>[1]

Steven Nowaczyk operated a restaurant in Hampton, New Hampshire, called the "Nifty Fifties Café," which was owned by a family corporation. The restaurant burned on December 14, 1993. The Hampton Police Department investigated the fire, which led to arson charges against Nowaczyk.[2] He was indicted by the

---

[1]Nowaczyk provides no factual statement in support of his objection to summary judgment. As a result, the properly supported facts provided by the warden are deemed admitted. <u>See</u> LR 7.2(b)(2). Because Nowaczyk signed his amended petition under penalty of perjury, pursuant to 28 U.S.C. § 1746, the factual allegations, which are based on his personal knowledge rather than merely information or belief, and which he asserts in his objection, are also considered. Court documents, transcripts, and other official documents speak for themselves. Although the warden failed to provide copies in the appendix of all of the motions and orders or decisions discussed, the court will accept the procedural background as stated because Nowaczyk has not challenged it.

[2]Before he operated the Nifty Fifties Café, Nowaczyk co-owned the Copper Penny Restaurant, which was damaged by fire in December of 1991. He was arrested and charged with arson of the Copper Penny Restaurant in February of 1994. Judge Coffey initially presided in that case, but recused herself before trial in May of 1997. Judge Walter Murphy presided at trial. A mistrial was declared after a day of trial, on May 6, 1997.

Rockingham Grand Jury on seven alternative counts of conspiracy to commit arson in violation of New Hampshire Revised Statutes Annotated ("RSA") 629:3, one count of criminal solicitation to commit arson in violation of RSA 629:2, and three counts of witness tampering in violation of RSA 641:5.

Nowaczyk was initially represented by the New Hampshire Public Defender's Office. After two hearings, Judge Patricia Coffey set bail, which Nowaczyk was unable to meet. Despite representation, Nowaczyk filed numerous motions himself. In April of 1994, he filed a motion for habeas corpus in which he challenged the amount of his bail naming the State of New Hampshire and "The Honorable Judge Patricia Coffey" as respondents. He asserted that Judge Coffey was biased against him because of publicity about his case and because she appeared to fall asleep several times during his bail hearing. Judge Coffey denied the motion, denying that she was biased in any way or influenced by publicity and stating that she paid close attention to all of the testimony.

In July of 1994, Nowaczyk filed a motion to dismiss his appointed counsel and to proceed pro se. The court granted his motion. He then represented himself with Attorney Mark Rumley serving as stand-by counsel.

Also in July, Nowaczyk filed a motion for a writ of mandamus

4

asserting that Judge Coffey was biased against him and seeking to have her removed from his case. On July 14, 1994, Nowaczyk filed a complaint against Judge Coffey with the Judicial Conduct Committee, alleging, among other things, that she had not paid attention during his bail hearings, that his bail was unfairly high, and that she was biased against him. On September 8, 1994, Nowaczyk filed a motion seeking the immediate recusal of Judge Coffey based on his pending judicial conduct complaint. The Judicial Conduct Committee dismissed his complaint on September 16, 1994, because the complaint arose from the judge's findings and rulings and was, therefore, a substitute for an appeal and because the complaint was without merit. On September 30, 1994, the New Hampshire Supreme Court denied Nowaczyk's petition for a writ of mandamus, without prejudice to raise the same issues on appeal.

Three weeks before trial was scheduled to begin, Nowaczyk asked that Attorney Mark Rumley be appointed trial counsel. A few days later, on November 14, 1994, Nowaczyk filed a petition for a writ of habeas corpus in this court, challenging the conditions of his bail. His petition was denied on February 7, 1995, see Nowaczyk v. New Hampshire, 882 F. Supp. 18 (D.N.H. 1995), and the decision was affirmed without a written decision on June 17, 1996.

Attorney Rumley represented Nowaczyk throughout the trial which was held from November 28, 1994, until December 1, 1994. Nowaczyk did not testify, and Attorney Rumley called no defense witnesses. At the close of the state's case, the prosecution dismissed by nolle prosequi ("nol pros") three of the indictments for conspiracy to commit arson as duplicative of the four remaining indictments on the same charge. The jury convicted Nowaczyk as to the four remaining counts charging conspiracy to commit arson, the solicitation count, and two of the witness tampering counts. The jury found him not guilty as to one of the witness tampering counts.

Attorney Rumley filed a motion for judgment notwithstanding the verdict, contending there was insufficient evidence of an agreement to support the convictions on the conspiracy to commit arson counts. On March 6, 1995, Attorney Mark Sisti, who had replaced Rumley as Nowaczyk's counsel, filed a motion to expand the motion for judgment notwithstanding the verdict and a motion for a new trial based on ineffective assistance of counsel, based on Attorney Rumley's decision to rest the defense case without witnesses. Judge Coffey denied the motion for judgment notwithstanding the verdict, concluding that sufficient evidence was presented to support the verdict.

A hearing was held on the motion for a new trial on May 30, 1995, before Judge Coffey. Attorney Rumley, Steven Nowaczyk, Penny Nowaczyk, and Dawn West, a guard at Rockingham County Jail, testified about the decision at trial not to have Nowaczyk testify and not to present defense witnesses.

On the same day, the court reconvened for Nowaczyk's sentencing hearing. He was sentenced to a term of ten and one-half to twenty-one years in the New Hampshire State Prison.

A second hearing on the motion for a new trial was held on June 27, 1995, to hear testimony from a deputy sheriff and another prisoner who were present when Nowaczyk and Attorney Rumley discussed the defense strategy. Judge Coffey issued her order on July 10, 1995, denying the motion for a new trial. Judge Coffey concluded that Nowaczyk agreed with Attorney Rumley's trial strategy and that Attorney Rumley's decision not to have Nowaczyk testify or to call defense witnesses was a reasonable trial strategy under the circumstances.

Attorney Sisti filed a notice of appeal on Nowaczyk's behalf on August 8, 1995, in the New Hampshire Supreme Court. The issues raised on appeal were whether a new trial should have been granted based on ineffective assistance of counsel, whether Judge Coffey should have recused herself after Nowaczyk filed a judicial conduct complaint against her, and whether the court

7

should have dismissed the case or granted the motion for judgment not withstanding the verdict due to insufficient evidence. On October 4, 1996, the supreme court affirmed the decisions of the trial court without a formal written opinion.

Proceeding pro se, Nowaczyk filed a "Motion for Rehearing or Reconsideration" on December 13, 1996, and a "Writ of Error Coram Vobis" on December 25, 1996. In the Motion for Rehearing, Nowaczyk asked the supreme court to reverse his conviction on the grounds that Judge Coffey did not recuse herself, that Judge Coffey did not hold a hearing on his claims of bias and judicial misconduct due to sleeping, that he was prejudiced when the court reporter read his address as the county house of corrections and the judge then gave the indictments to the jury which contained his jail address, that he was deprived of an opportunity to testify in his own defense, and that Justice Johnson should not have participated in reviewing his appeal because he was vice chairman of the Judicial Conduct Committee that considered Nowaczyk's complaint against Judge Coffey. In the "Writ of Error Coram Vobis," Nowaczyk asserted that he was prejudiced because the original indictments submitted to the jury included reference to the Copper Penney Restaurant fire. The supreme court considered "Writ of Error Coram Vobis" as a supplement to Nowaczyk's motion for rehearing, and summarily denied the motion

8

on January 24, 1997.

The case against Nowaczyk arising from the Copper Penney Restaurant fire continued before Judge Coffey. Attorney Sisti, on behalf of Nowaczyk, filed a motion to recuse Judge Coffey on grounds of bias. A hearing was held on May 5, 1997. For the first time, Nowaczyk also raised an issue of prior representation by Judge Coffey's husband, Attorney John Coffey. Nowaczyk asserted that he had consulted with Attorney John Coffey in 1991, about renegotiation of the Copper Penney Restaurant lease, but that Attorney Coffey told him he could not take the case and referred him to another law firm. Judge Coffey stated that she was unaware of any representation but would check into it.

After checking into the matter, Judge Coffey issued an order recusing herself from the case to avoid the appearance of impropriety. The case was reassigned to Judge Walter Murphy. The prosecution on the Copper Penny Restaurant charges ended in a mistrial on May 6, 1997.

Nowaczyk, proceeding pro se, filed his present petition for habeas relief in this court on June 20, 1997. Nowaczyk then filed a motion to vacate his convictions in the Nifty Fifties Café case, alleging bias based on Judge Coffey's decision to recuse herself in the Copper Penney Restaurant case. Judge Coffey denied Nowaczyk's motion. After a hearing held on October

9

30, 1997, Judge Coffey vacated her previous decision, denying Nowaczyk's motion for a hearing and to modify or suspend his sentences, and recused herself from the case. Judge Murphy was assigned to the case.

Nowaczyk then moved to have all of Judge Coffey's "acts" declared void, in order to set aside his convictions and have the charges dismissed. Judge Murphy considered that motion along with Nowaczyk's previous motion to modify his sentence. Both motions were denied on December 1, 1997. In response, on December 3, 1997, Nowaczyk filed a motion to vacate the December 1, 1997, decision and to have Judge Murphy recused from the case due to bias. He requested a hearing. On the same day, he filed a "Writ of Coram Nobis, or in the Alternative a Motion to Reconsider and Request for Hearing to Clarify the Record," again addressing issues of bias and recusal. Those motions were denied by Judge Murphy on December 18, 1997.

Nowaczyk filed a "Petition for an Emergency Writ of Errors, or Alternatively Writ of Certiorari" with the New Hampshire Supreme Court on January 12, 1997. He asserted that Judge Murphy had arbitrarily denied his motions pertaining to Judge Coffey's rulings and decisions. He also asserted that all of Judge Coffey's "acts, rulings and orders concerning the plaintiff" in the indictments brought in the Nifty Fifties Café case "must be

10

declared absolutely void," that Judge Murphy committed perjury, and challenged certain Superior Court Rules. Nowaczyk's pleading was declined by the New Hampshire Supreme Court on July 31, 1998.

On May 10, 1998, Nowaczyk filed a motion to set aside his convictions based on double jeopardy. He argued that the dismissal of three of the counts charging him with conspiracy to commit arson, by nol pros, during his trial resulted in double jeopardy when he was convicted on the other four counts of conspiracy to commit arson. Judge Gray denied Nowaczyk's motion on July 6, 1998, stating that "the Court finds that the issues raised are either untimely, frivolous, previously dealt with or previously waived." The New Hampshire Supreme Court declined the appeal of the double jeopardy claim.

On March 12, 1999, Judge Coffey entered an order stating that the charges in three of the indictments for conspiracy to commit arson, on which Nowaczyk was found guilty, were duplicative of other charges on which he was sentenced. She stated that unless the state objected within thirty days of the order, those docket numbered cases would be administratively dismissed. In the meantime, Nowaczyk's habeas petition proceeded in this court and on appeal to the First Circuit Court of Appeals.

11

In his amended petition, Nowaczyk presents claims of judicial bias, double jeopardy, insufficient evidence, jury taint, and ineffective assistance of counsel. Nowaczyk seeks an evidentiary hearing to supplement the record as to many of his claims. The warden moves for summary judgment, arguing that an evidentiary hearing is not warranted and that the claims may be decided as a matter of law.

A.  Evidentiary Hearing

Nowaczyk filed a motion for an evidentiary hearing in which he mistakenly assumed that because the warden denied many of the allegations in his complaint, a factual issue existed that required a hearing. In his objection to the warden's motion for summary judgment, Nowaczyk more specifically addressed his request for a hearing to develop the factual bases of his claims of judicial bias, prejudice arising from particular information provided to the jury, double jeopardy, and ineffective assistance of counsel. The warden objects to a hearing.

Section 2254(e) governs the availability of a hearing in a federal habeas proceeding. Williams v. Taylor, 529 U.S. 420, 429 (2000). The state court's determination of factual issues is presumed to be correct unless the applicant rebuts the findings

12

by clear and convincing evidence. § 2254(e). A hearing may be held in federal court to develop the factual basis of a claim if the applicant was diligent in his efforts to develop the factual record in state court, but, despite his diligence, the state court did not address the factual issues. See Williams, 529 U.S. 437. If, on the other hand, an applicant was not diligent, a federal court will not hold an evidentiary hearing unless the applicant shows that his claim is based on a new and retrospective rule of constitutional law, on a factual predicate that could not have been developed in state court, or that the facts clearly and convincingly establish that no reasonable jury would have found him guilty. § 2254(e)(2).

For purposes of § 2254(e), "[f]actual issues are defined as basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000) (internal quotations omitted). No evidentiary hearing is necessary as to an issue that may be resolved as a matter of law based either on undisputed facts or on the habeas applicant's version of the facts, taken as true. See, e.g., Johnston v. Luebbers, 288 F.3d 1048, 1059 (8th Cir. 2002); Noel v. Norris, 194 F. Supp. 2d 893, 922 (E.D. Ark. 2002); Dias v. Maloney, 156 F. Supp. 2d 104, 124 (D. Mass. 2001). Because the availability

13

of an evidentiary hearing depends on the circumstances of the particular issue, Nowaczyk's request for an evidentiary hearing will be addressed separately as to each of his claims for which he seeks a hearing.

B.  Judicial Bias

Due process requires that a criminal defendant be tried before an impartial judge.  See Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); In re Murchison, 349 U.S. 133, 136 (1955).  To show a due process violation due to a lack of impartiality, the claimant must prove either that the judge was actually biased against him or that the appearance of bias was sufficient to establish a conclusive presumption of bias.  See, e.g., Taylor v. Hayes, 418 U.S. 488, 501 (1974); Tumey v. Ohio, 273 U.S. 510, 532 (1927); Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994).

1.  Judge Coffey.

Nowaczyk contends that Judge Coffey was biased against him based on her rulings on pretrial motions, his perception of her "attitude" toward him, appearing to fall asleep during defense testimony at his bail hearing, and his judicial conduct complaint against her.  He also contends that she was biased against him because Nowaczyk sought legal advice from Judge Coffey's husband,

14

John Coffey, which was the basis for Judge Coffey's later decision to recuse herself. Nowaczyk asserts that an evidentiary hearing is necessary to develop the facts pertinent to Judge Coffey's alleged bias.

When the issue of bias was first raised in state court, Judge Coffey denied that she was inattentive to defense witnesses and denied that she was biased. The New Hampshire Supreme Court denied Nowaczyk's appeal. During post-conviction proceedings and following a hearing on the bias issue, Judge Coffey decided to recuse herself based upon her husband's prior contact with Nowaczyk. She noted for the record, however, that she had left the law firm before her husband's consultation with Nowaczyk and that she had been unaware of that contact until Nowaczyk raised the issue in May of 1997 and her husband later confirmed the contact. Judge Murphy found, taking all of Nowaczyk's allegations as true, that Nowaczyk consulted with John Coffey on December 4, 1991, two years before the criminal activities at issue in the Nifty Fifties Café case, and three years before Judge Coffey presided in that case. He also found that Judge Coffey was not aware of the consultation until Nowaczyk raised the issue after trial. The state court decisions did not consider Supreme Court precedent, and therefore, they are subject to de novo review. Fryar v. Bissonnette, 318 F.3d 339, 341 (1st

15

Cir. 2003).

Despite the availability of transcripts of the proceedings before Judge Coffey, Nowaczyk has not cited any portions of the transcripts that demonstrate Judge Coffey's "attitude." In addition, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not demonstrate bias. Liteky v. United States, 510 U.S. 540, 555-56 (1994); Aguilar-Solis v. I.N.S., 168 F.3d 565, 569 (1st Cir. 1999). Even if Nowaczyk could show remarks that were critical of him or his case, such remarks would show bias only if they "reveal an opinion that derives from an extrajudicial source" or "reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible." Liteky, 510 U.S. at 555. Taking Nowaczyk's allegations as true, neither circumstance has occurred in this case.[3]

Judicial rulings are not sufficient to show bias.[4] Liteky,

---

[3]Nowaczyk attempts to make much of his consultation with John Coffey at the firm where Judge Coffey practiced before she was appointed to the bench. He imagines that an attorney client relationship existed between him and Judge Coffey, although she had already been appointed to the Superior Court when he met with John Coffey. He also imagines that John Coffey disclosed privileged information. There is no suggestion that privileged information was disclosed nor is there any reason that such information would be prejudicial to Nowaczyk.

[4]In response to Nowaczyk's counsel's objection, Judge Coffey ruled at the beginning of trial that certain statements in the indictments, which indicated that he was in jail and referred to

16

510 U.S. at 555. Nothing about Nowaczyk's judicial conduct complaint or his motions to recuse Judge Coffey rise to the level of a personal attack that would be likely to undermine her impartiality. Cf. Mayberry v. Pennsylvania, 400 U.S. 455, 466 (1971) (holding that defendant's persistent insulting personal attacks on judge show potential for bias); accord Taylor, 418 U.S. at 501-03. Nowaczyk's consultation with John Coffey does not raise a question of Judge Coffey's financial interest in the case. Cf. Tumey, 273 U.S. at 535. Nor does that consultation suggest any basis for Judge Coffey to hold personal animosity or bias against Nowaczyk or to have privileged information about Nowaczyk that might have influenced the criminal matter. Cf. Murchison, 349 U.S. at 138. The fact that Judge Coffey later recused herself, based on Nowaczyk's consultation with John Coffey, does not suggest unconstitutional bias because the record establishes she was unaware of the consultation during Nowaczyk's trial and because recusal based on state codes or ethical

---

investigation of the fire at the Copper Penny Restaurant, were not admissible and would not be read to the jury. Despite that ruling, unredacted copies of the indictments were submitted to the jury for consideration during their deliberations. Nowaczyk argues that Judge Coffey demonstrated bias by allowing unredacted copies of the indictments to be considered by the jury. The record does not indicate that submission of the unredacted copies of the indictments was anything but a mistake that went unnoticed by everyone until long after the trial.

guidelines does not implicate due process.  See, e.g., Aetna Life
Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986).

Therefore, because the facts as Nowaczyk asserts them do not
support his claim that Judge Coffey was unconstitutionally biased
against him, a hearing is not necessary.  The state court
decisions pertaining to Nowaczyk's claims of Judge Coffey's bias
are not contrary to pertinent Supreme Court precedent.  See
Lockyer v. Andrade, 123 S. Ct. 1166, 1173 (2003).

Judge Coffey's participation in Nowaczyk's criminal
proceeding did not violate his due process rights.


### 2.  Justice Johnson.

Nowaczyk also asserts that Justice Johnson was
unconstitutionally biased against him.  He contends that Justice
Johnson's participation in the Judicial Conduct Committee, when
Nowaczyk's complaint against Judge Coffey was considered,
precluded him from sitting on Nowaczyk's direct appeal to the New
Hampshire Supreme Court.  Nothing about Justice Johnson's
participation in both the Judicial Conduct Committee matter and
Nowaczyk's direct appeal suggests an appearance of bias.  See,
e.g., Cordoza v. Pac. States Steel Corp., 320 F.3d 989, 1000 (9th
Cir. 2003) (citing Duckworth v. Dep't of Navy, 974 F.2d 1140,
1143 (9th Cir. 1992)); cf. Murchison, 349 U.S. at 138.

18

### 3.  Institutional bias.

Nowaczyk's new claim of institutional bias, including bias by Judge Murphy, is not pled in his amended complaint.  Even if the claim were properly raised, however, it is meritless for the same reasons that have been discussed above.


## C.  Double Jeopardy

Nowaczyk claims that the entry of nolle prosequi as to three counts of conspiracy to commit arson and his subsequent conviction on the remaining four counts constitutes double jeopardy.  Because the state court denied his claim perfunctorily, it is subject to de novo review.  Nowaczyk seeks a hearing on his claim.

"The Double Jeopardy Clause provides:  '[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'"  Kansas v. Hendricks, 521 U.S. 346, 369 (1997).  "[J]eopardy attaches when the jury is empaneled and sworn."  Crist v. Bretz, 437 U.S. 28, 35 (1978).  If a charge is dismissed by nol pros before jeopardy attaches, the dismissal "neither operates as an acquittal nor prevents further prosecution of the offense."  Bucolo v. Adkins, 424 U.S. 641, 642 (1976).  Under New Hampshire law, if a criminal charge is dismissed by nol pros after jeopardy has attached, the effect is

19

to prevent the state from reprosecuting the defendant on that charge.  State v. Pond, 133 N.H. 738, 741 (1990).  However, the resolution of some, but not all, of the charges against a defendant during trial does not prevent the state from continuing to prosecute him on the remaining charges.  See Ohio v. Johnson, 467 U.S. 493, 501-02 (1984).

At the close of the evidence, the state nol prossed three indictments as duplicative of the remaining four indictments for conspiracy to commit arson.  Because jeopardy had attached before the indictments were nol prossed, the prohibition against double jeopardy would prevent the state from re-indicting and prosecuting Nowaczyk on the three indictments that were nol prossed.  That did not happen.

Instead, Nowaczyk was convicted on the remaining four indictments charging conspiracy to commit arson.  He was not subjected to double jeopardy by the state's continued prosecution and his conviction of the four remaining indictments.[5]  No hearing is necessary on the double jeopardy issue as the pertinent facts are not in dispute.

---

[5]Nowaczyk is mistaken that the prohibition against double jeopardy requires the dismissal of all related charges when duplicative indictments are nol prossed.  He cites no legal authority that supports such a theory.  Instead, the Double Jeopardy Clause prohibits conviction on duplicative indictments.  See United States v. Felix, 503 U.S. 378, 385 (1992).

20

D.  Sufficiency of the Evidence

Nowaczyk contends that there was insufficient evidence at trial to support his conviction of conspiracy to burn the Nifty Fifties Café.  The trial court decision denying Nowaczyk's motion for judgment notwithstanding the verdict did not address a federal basis for the claim, and the New Hampshire Supreme Court affirmed the conviction without a written decision.  Nowaczyk has not cited a Supreme Court case with materially indistinguishable facts, and the court is not aware of such a case.  See §  2254(d)(1); Lockyer, 123 S. Ct. at 1173.  Therefore, this claim is reviewed under the de novo standard.

The due process clause of the Fourteenth Amendment requires that a criminal defendant be convicted only by evidence sufficient to establish guilt beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 362 (1970).  When the sufficiency of the evidence is challenged for habeas review, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"Under New Hampshire law, a person is guilty of conspiracy if, 'with a purpose that a crime defined by statute be committed,

21

he agrees with one or more persons to commit or cause the commission of such crime, and an overt act is committed by one of the conspirators in furtherance of the conspiracy.'" State v. Blackmer, 816 A.2d 1014, 1017 (N.H. 2003) (quoting RSA 629:3, I). The crime charged in Nowaczyk's case was arson, defined as knowingly setting a fire which damages the property of another. RSA 634:1. A conspiracy need not be proved by direct evidence but instead may "be inferred from the facts and circumstances of the case." Iannelli v. United States, 420 U.S. 770, 778 n.10 (1975); see also State v. Theodore, 118 N.H. 548, 551 (1978).

Nowaczyk contends that the evidence was insufficient to show that he and Grattan agreed that Grattan would set fire to the Café. Sean Grattan testified at length about the circumstances of the fire that he set at the Nifty Fifties Café. Grattan testified that he started working for Nowaczyk at the Nifty Fifties Café in September of 1992. Nowaczyk told him that the business was losing money and that he wanted to sell it. In November of 1993, Nowaczyk asked Grattan to burn down a restaurant called Wilbur's Countryside Diner, which was owned by a prospective buyer for the Nifty Fifties Café, so that the owner could collect the insurance on the building and use it to buy the Café. He offered Grattan $500 and a car if he burned the Diner. Nowaczyk gave Grattan some advice about how to start the fire.

After preparing to start the fire at the Diner, Grattan decided against it, and told Nowaczyk he decided not to do it.

A few weeks later, Nowaczyk told Grattan that he wanted to get rid of the Café building in order to collect the insurance money. On December 13, 1993, Nowaczyk offered Grattan $1000 to burn down the building and gave him suggestions about how to do it. Grattan did not immediately accept the offer. Later that night, he decided he would do it.

As directed by Nowaczyk, Grattan unscrewed the bolts on the bulkhead to the basement of the Café building. He took a gas can from the Café to the gas station next door and filled it. At 2:30 am on December 14, 1993, Grattan entered the Café building through the bulkhead. He took the money out of the cash register, as Nowaczyk had told him to do. Instead of starting the fire in the kitchen, as Nowaczyk told him, he went to the basement and poured gasoline in the office, lit the fire there, and left. He heard the fire engines come and people talking outside because he lived near the Café building.

When he saw Nowaczyk the next day, Nowaczyk said: "Good job." Nowaczyk told him not to tell anyone or he would be killed. Nowaczyk gave Grattan $500 and told him he would get the rest when he got the insurance settlement on the building.

Raymond Desilets, who was a social friend and business

associate of Nowaczyk's, also testified about the Café fire. He said that Nowaczyk told him during the evening of December 13, 1993, that he would not have to open the Café the next morning because it would be on fire. When Nowaczyk started to tell Desilets more detail about the fire, Desilets said he did not want to hear about it. Desilets went to work at the Café anyway the next morning and found that the building was on fire. Several days later Nowaczyk told Desilets that Grattan set the fire and told him not to say anything about the fire.

Amy Keegan, who was Nowaczyk's girlfriend, testified about admissions Nowaczyk made about the fire. When Keegan refused Nowaczyk's marriage proposal, she told him she did not think he was trustworthy. To prove himself, Nowaczyk said that he would answer any question she asked. Keegan asked him who lit the fire at the Café, and he said that he hired Grattan to light the fire. Nowaczyk explained that he was in debt and had not been able to sell the business.

Nowaczyk's counsel elicited testimony from Grattan to undermine the existence of an agreement between Grattan and Nowaczyk to commit arson. Grattan accepted defense counsel's statement that he burned the Café down without an agreement to do so. Grattan's technical denial of an agreement to set the fire, however, does not establish that no agreement existed. The

24

factual circumstances that Grattan described in his testimony, along with the evidence provided by Desilets and Keegan, show that after some thought, Grattan accepted Nowaczyk's offer to burn the Café building in exchange for money. Based upon Nowaczyk's offer, Grattan set the fire, and Nowaczyk paid him for his work.

Therefore, the trial evidence amply supports the existence of an agreement between Nowaczyk for purposes of proving a conspiracy to commit arson. A rational trier of fact could easily have found Nowaczyk guilty beyond a reasonable doubt.

E.   Jury Taint Based on Unredacted Indictments

The jury was given copies of the indictments against Nowaczyk to consider during their deliberations. Each of the indictments identified Nowaczyk as "of Commorant of County House of Corrections, Brentwood, New Hampshire." One of the indictments, charging witness tampering, referred to an investigation regarding a fire at the Copper Penny Restaurant.

At Nowaczyk's counsel's request, Judge Coffey directed the clerk not to read the address on the remaining indictments and not to read the reference to the fire at the Copper Penny Restaurant in one of the indictments. As part of the jury instructions, Judge Coffey explained to the jury that they would

have copies of the indictments that were read to them.  No objection or mention was made about the reference in the indictments to the address or to the fire at the Copper Penny Restaurant.[6]  The indictments were submitted to the jury without redaction.[7]  Because the supreme court denied Nowaczyk's motion for a rehearing and reconsideration without a written decision, there is no state court analysis of the issue for review.[8]

Trial errors are subject to harmless error review while structural defects in a trial are not.  See Arizona v. Fulminante, 499 U.S. 279, 307-10 (1991).  The inadvertent submission of the unredacted indictments to the jury constitutes, at most, trial error, which is evaluated under the harmless error

---

[6]Despite Nowaczyk's interpretation that Judge Coffey deliberately gave the jury the unredacted indictments to prejudice his case, the record provides no hint of such a motive. The warden's argument that the Copper Penny Restaurant was redacted from that indictment is undermined by the exhibit the warden submits in support of the argument.

[7]Despite the warden's argument, the editing marks on the reference to the Copper Penny Restaurant do not constitute redaction.

[8]For the same reason, the warden's argument that the unredacted indictment issue was procedurally defaulted in state court is unavailing. See, e.g., Coleman v. Thompson, 501 U.S. 722, 735 (1991); accord Phoenix v. Matesanz, 189 F.3d 20, 26 (1st Cir. 1999).

standard.[9]  See, e.g., Penry v. Johnson, 532 U.S. 782, 795 (2001); United States v. Olano, 507 U.S. 725, 738 (1993); United States v. Bradshaw, 281 F.3d 278, 289 (1st Cir. 2002).  Therefore, Nowaczyk would be entitled to habeas relief only if the indictments "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Calderon v. Coleman, 525 U.S. 141, 145 (1998) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), internal quotation omitted).

The court is satisfied that to the extent the jury may have considered the unredacted indictments, that information did not have a substantial and injurious effect on the verdict.  Judge Coffey instructed the jury that the indictments were not evidence.  Jurors are presumed to follow their instructions.  Penry, 532 U.S. at 799.

In addition, the information in the indictments was not sufficiently prejudicial to raise a question about its influence on the jury's verdict.  Cf. O'Neal v. McAninch, 513 U.S. 432, 437 (1995).  Nowaczyk's residence at the county jail was indicated only by the address in the indictments, not by a constant

---

[9]Although it is unlikely that consideration of the unredacted indictments implicated Nowaczyk's constitutional rights at all, the claim is best analyzed under the harmless error standard.  See, e.g., Fryar, 318 F.3d at 342; Fortini, 257 F.3d at 48.

reminder to the jury that he was an inmate, such as by being forced to appear at trial in prison attire or to sit in a prisoner's dock. See Estelle v. Williams, 425 U.S. 501, 503-06 (1976); Young v. Callahan, 700 F.2d 32, 34 (1st Cir. 1983). The statement in one indictment about an investigation of a fire at the Copper Penny Restaurant, in addition to the fire at the Nifty Fifties Café, was, at worst, only an oblique reference to an uncharged crime or bad act. Cf. Marshall v. United States, 360 U.S. 310, 312-13 (1959) (exercising Supreme Court's supervisory power to reverse conviction for unlicenced dispensing of drugs where jurors exposed to news accounts of defendant's prior convictions for unlicenced practice of medicine); Ford v. Curtis, 277 F.3d 806, 811 (6th Cir. 2002); Bonner v. Holt, 26 F.3d 1081, 1084 (11th Cir. 1994); Jeffries v. Blodgett, 5 F.3d 1180, 1190-91 (9th Cir. 1993). Therefore, submission of the unredacted indictments to the jury was harmless error.

F.   Ineffective Assistance of Counsel

Nowaczyk contends that his trial counsel, Mark Rumley, was ineffective because he unilaterally rested the defense, without giving Nowaczyk an opportunity to testify in his own defense and without calling other defense witnesses. Nowaczyk also faults Rumley for failing to move for a judgment of acquittal based on

28

double jeopardy.[10]

Although the motion does not appear to be included in the record, Nowaczyk and the warden agree that he raised the double jeopardy basis for a claim of ineffective assistance of counsel in a motion to vacate or set aside judgment filed in state court on May 10, 1998.  The state court denied the motion without a written decision stating that "the issues raised are either untimely, frivolous, previously dealt with or previously raised." State v. Nowaczyk, 94-S-457, et al., (Rockingham County Sup. Ct. July 8, 1998).  As is discussed above, Nowaczyk's double jeopardy claim is without merit.  The Sixth Amendment does not require counsel to pursue patently meritless claims.  See United States v. Cronic, 466 U.S. 648, 657 n.19 (1984); United States v. Levy, 870 F.2d 37, 38 (1st Cir. 1989).

Nowaczyk's claim of ineffective assistance of counsel based on the decision to rest the defense was raised in his motion for a new trial and was the subject of a hearing held on May 30 and

---

[10]In his objection to the warden's motion for summary judgment, Nowaczyk also charges that Rumley failed to investigate the case.  To the extent Nowaczyk intended to assert a new claim, separate from his claim that Rumley unilaterally rested the defense denying him the opportunity to testify on his own behalf and to present witnesses, that claim is not included in his petition and will not be separately considered here.  In addition, such a claim is contradicted by Nowaczyk's statements that Rumley had interviewed and subpoenaed witnesses to testify at trial.

June 27, 1995.  The state court found, after a thorough review of the evidence presented at the hearing, that Rumley "strongly advised the defendant to rest without putting on a defense, but that the final decision to do so was made by the defendant." State v. Nowaczyk, No. 94-S-457, et al. at 9, (Rockingham County Sup. Ct. July 10, 1995).  The court found Nowaczyk's testimony "completely lacking in credibility."  Id. at 9-10.  Contrary to Nowaczyk's version of events, the court found that Rumley called him the night before the defense rested to discuss the strategy. Id. at 11.  The court further found:  "Based upon [testimony at the hearing] and the court's prior experience with the defendant, the court finds the defendant agreed with Attorney Rumley not to present a defense during his trial, and he now pleads ineffective assistance of counsel because the trial strategy did not have the desired effect."  Id.

The court then applied both the federal and state standards for ineffective assistance of counsel.  The court concluded that Rumley's conduct during trial "constituted reasonable trial strategy," due to the risks of exposing the jury to Nowaczyk's previous conviction for bank fraud and the defense witnesses' statements that their testimony would not help Nowaczyk.  The court denied the motion for a new trial based on a claim of ineffective assistance of counsel.

30

Constitutionally ineffective assistance of counsel is shown if "counsel's representation fell below an objective standard of reasonableness," and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Counsel's conduct is entitled to a "strong presumption" of professional reasonableness. Bell v. Cone, 535 U.S. 685, 702 (2002).

To succeed on his ineffective assistance of counsel claim for habeas relief, Nowaczyk must show that the state court's disposition of the ineffective assistance of counsel claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contracts the governing law set forth in the [Supreme Court's] cases,' . . . or if 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result.'" Mello v. DiPaulo, 295 F.3d 137, 142 (1st Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). An unreasonable application of Supreme Court precedent occurs when the state

court identifies the applicable principle "'but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

The facts found by the state court are presumed to be correct unless the presumption is rebutted by clear and convincing evidence. § 2254(e)(1). Nowaczyk has not carried his burden of rebutting the presumption.

Although the facts in Bell, 535 U.S. at 697, are somewhat similar to the circumstances in this case, no Supreme Court case appears to be materially indistinguishable. Given the state court's findings that Nowaczyk agreed with Rumley's trial strategy and that satisfactory reasons existed to support that strategy, the court's denial of the motion for a new trial was not an unreasonable application of the first part of the Strickland standard. Since the court found no constitutional deficiency in Rumley's representation, there was no need to consider any possible prejudice.

## Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 103) is granted. The applicant's motion for an evidentiary hearing (document no. 91) is denied. The application for a writ of habeas corpus is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 24, 2003

cc:  Steven J. Nowaczyk, pro se
     Nicholas P. Cort, Esquire